UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X

CITIZENS UNITED, and                          :
CITIZENS UNITED FOUNDATION,        :     No. 14-CV-3703 (SHS)
                                                           :
                              Plaintiffs,          :
                                                           :     ECF Case
            -against-                                :
                                                           :
ERIC SCHNEIDERMAN, in his official        :
capacity as New York Attorney General,    :
                                                           :
                              Defendant.          :
-------------------------------------------------------------------- X


**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**




                                                ERIC T. SCHNEIDERMAN
                                                Attorney General of the State of New York
                                                120 Broadway, 24th Floor
                                                New York, New York 10271



Katherine B. Dirks
Linda Fang
Assistant Attorneys General
   *of Counsel*


Dated: July 23, 2014

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT .................................................................................1

FACTUAL BACKGROUND...................................................................................2

    A.    The Internal Revenue Service's Requirements for Tax-Exempt Nonprofits...........3

    B.    New York's Registration Requirements for Charitable Organizations ..................3

    C.    The Attorney General's Efforts to Identify Registration Deficiencies ...................5

STANDARD OF REVIEW ....................................................................................6

ARGUMENT .....................................................................................................6

I.    PLAINTIFFS HAVE NO LIKELIHOOD OF PREVAILING ON THE MERITS
    BECAUSE THEIR CLAIMS FAIL AS A MATTER OF LAW .......................................7

    A.    <u>New York's Registration and Reporting Requirements for Charitable
        Organizations Do Not Violate the First Amendment</u> ...............................7

        1.    The challenged reporting requirement is directly related to a substantial
            interest in enforcing State laws. .....................................................8

        2.    Neither Schaumburg nor any other case cited by Plaintiffs compels a
            different conclusion. ...................................................................11

        3.    The challenged reporting requirement is not void-for-vagueness. .................13

        4.    Plaintiffs cannot establish a cognizable First Amendment claim based on
            their donors' subjective desire for privacy........................................14

    B.    <u>Plaintiffs Have No Cognizable Claim That Due Process Has Been Violated</u> .......16

        1.    Plaintiffs cannot claim that the Schedule B requirement in § 91.5(c) has
            been promulgated without notice in violation of due process. ....................... 17

        2.    The Attorney General's effort to identify Schedule B filing deficiencies
            is a proper application of State regulatory authority.......................................19

    C.    <u>The Regulation Does Not Violate the State Administrative Procedure Act</u>..........20

    D.    <u>Federal Law Has No Bearing on the Ability of State Agencies to Request
        Federal Tax Documentation from Charitable Organizations</u>...............................21

II.     PLAINTIFFS' WHOLLY CONCLUSORY ALLEGATIONS OF SUBJECTIVE
        "CHILL" AND THEIR UNDUE DELAY IN SEEKING RELIEF ARE
        INSUFFICIENT TO ESTABLISH IRREPARABLE HARM ..........................................23

III.    A PRELIMINARY INJUNCTION WOULD NOT SERVE THE PUBLIC
        INTEREST AND IS NOT SUPPORTED BY EQUITABLE CONSIDERATIONS........24

CONCLUSION...............................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

<u>Abrams v. N.Y. Found. for Homeless, Inc.</u>, 148 Misc. 2d 791 (N.Y. Sup. Ct. 1990) ................. 10

<u>Am. Postal Workers Union v. United States Postal Svc.</u>, 766 F.2d 715 (2d Cir. 1985) ............... 23

<u>Am. Target Adver., Inc. v. Giani</u>, 199 F.3d 1241 (10th Cir. 2000) ............................ 10, 13, 14, 22

<u>Ass'n of Legal Aid Attorneys v. City of N.Y.</u>, No. 96-cv-8137,
   1997 U.S. Dist. LEXIS 15532 (S.D.N.Y. Oct. 8, 1997) ......................................... 24

<u>Buckley v. Valeo</u>, 424 U.S. 1 (1976) ...................................................................... 8, 10

<u>Citibank, N.A. v. Citytrust</u>, 756 F.2d 273 (2d Cir. 1985) .................................................. 23

<u>Citizens United v. Fed. Election Comm'n</u>, 558 U.S. 310 (2010) ................................. 8, 11, 13, 15

<u>City of Lakewood v. Plain Dealer Publ'g Co.</u>, 486 U.S. 750 (1988) ........................................ 14

<u>Clear Channel Outdoor, Inc. v. City of N.Y.</u>, 594 F.3d 94 (2d Cir. 2010) ................................... 20

<u>Ctr. for Competitive Politics v. Harris</u>, No. 14-cv-636,
   2014 U.S. Dist. LEXIS 66512 (E.D. Cal. May 13, 2014) ................................................ passim

<u>Ctr. for Individual Freedom v. Madigan</u>, 697 F.3d 464 (7th Cir. 2012) ................................. 13, 15

<u>DaimlerChrysler Corp. v. Spitzer</u>, 26 A.D.3d 88 (N.Y. App. Div. 2005) ..................................... 18

<u>Demko v. United States</u>, 216 F.3d 1049 (Fed. Cir. 2000) ............................................. 18

<u>Doe v. Reed</u>, 561 U.S. 186 (2010) ........................................................................ 15

<u>Duane Reade, Inc. v. Cardtronics. LP</u>, 54 A.D.3d 137 (N.Y. App. Div. 2008) ............................ 18

<u>Elcor Health Servs. v. Novello</u>, 100 N.Y.2d 273 (2003) ............................................... 20

<u>Elrod v. Burns</u>, 427 U.S. 347 (1976) ...................................................................... 23

<u>Fed. Comm'cns Comm'n v. Fox Television Stations, Inc.</u>, 132 S. Ct. 2307 (2012) .............. 13, 20

<u>Finisar Corp. v. DirecTV Group, Inc.</u>, 523 F.3d 1323 (Fed. Cir. 2008) ...................................... 18

<u>Gillette Co. v. Ed Pinaud, Inc.</u>, 178 F. Supp. 618 (S.D.N.Y. 1959) ............................................ 24

Heckler v. Chaney, 470 U.S. 821 (1985) .................................................................. 19

Illinois ex rel. Madigan v. Telemarketing Assocs., 538 U.S. 600 (2003)..................................... 12

K.F. v. Monroe Woodbury Cent. Sch. Dist., No. 12-cv-2200,
    2012 U.S. Dist. LEXIS 60341 (S.D.N.Y. Apr. 30, 2012)....................................................... 24

Kehoe v. Fid. Fed. Bank & Trust, 421 F.3d 1209 (11th Cir. 2005)............................................. 18

Laird v. Tatum, 408 U.S. 1 (1972)............................................................................. 16

Latino Officers Ass'n v. Safir, 170 F.3d 167 (2d Cir. 1999)..................................................... 16

Leland v. Moran, 80 Fed. Appx. 133 (2d Cir. 2003) .............................................................. 19

Long v. Adirondack Park Agency, 76 N.Y.2d 416 (1990).................................................... 17, 18

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ......................................................... 16

McConnell v. Fed. Election Comm'n, 540 U.S. 93 (2003) ...................................................... 15

Monserrate v. N.Y. State Senate, 599 F.3d 148 (2d Cir. 2010)................................................... 6

N.Y. SMSA Ltd. P'ship v. Town of Clarkstown, 612 F.3d 97 (2d Cir. 2010) ............................... 21

N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health, 545 F. Supp. 2d 363 (S.D.N.Y. 2008)......... 25

NAACP v. Alabama, 357 U.S. 449 (1958)....................................................................... 15

Nat'l Awareness Found. v. Abrams, 50 F.3d 1159 (2d Cir. 1995)................................................. 9

Nat'l Org. for Marriage v. McKee, 649 F.3d 34 (1st Cir. 2011) .................................................. 7

Pope v. Cnty. of Albany, 687 F.3d 565 (2d Cir. 2012)........................................................... 6

Public Citizen, Inc. v. Pinellas Cnty., 321 F. Supp. 2d 1295 (M.D. Fla. 2004)............... 11, 13, 14

Remba v. Fed'n Emp't & Guidance Serv., 149 A.D.2d 131 (N.Y. App. Div. 1989) .................. 18

Riley v. Nat'l Fed'n of the Blind, 487 U.S. 781 (1988) ........................................................ 7, 8

Rodriguez v. DeBuono, 175 F.3d 227 (2d Cir. 1999).................................................... 23

Sec'y of State of Md. v. Munson Co., 467 U.S. 947 (1984)......................................................... 7, 13

SpeechNow.org v. Fed. Election Comm'n, 599 F.3d 686 (D.C. Cir. 2010)................................... 8

Stokwitz v. United States, 831 F.2d 893 (9th Cir. 1987)................................................................ 22

Viguerie Co. v. Paterson, 94 A.D.2d 672 (N.Y. App. Div. 1983)................................................. 9

Vill. of Schaumburg v. Citizens for Better Env't, 444 U.S. 620 (1980)................................ passim

Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442 (2008) ................................ 7

Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008) ....................................................... 6

**Statutes**

26 U.S.C. § 501 ............................................................................................................................... 3

26 U.S.C. § 6103 ................................................................................................................ 3, 21, 22

26 U.S.C. § 6104 ...................................................................................................................... passim

N.Y. EPTL § 8-1.4 ...................................................................................................................... 2, 3

N.Y. Exec. Law § 171-a .................................................................................................................. 7

N.Y. Exec. Law § 172 ..................................................................................................................... 2

N.Y. Exec. Law § 172-b .......................................................................................................... 3, 6, 14

N.Y. Exec. Law § 175 ................................................................................................................. 3, 14

N.Y. Exec. Law § 177 ................................................................................................................. 3, 14

N.Y. Exec. Law §§ 171-a to 177 .................................................................................................... 2

N.Y. SAPA § 202 ........................................................................................................................... 20

**Other Authorities**

2006-13 N.Y. St. Reg. 45-47 (Mar. 29, 2006) ............................................................................... 4

2006-40 N.Y. St. Reg. 19 (Oct. 4, 2006) ....................................................................................... 4

S. Rep. 91-552 (Nov. 21, 1969) .................................................................................................... 22

**<u>Regulations</u>**

13 NYCRR § 90.1 .................................................................................................. 7

13 NYCRR § 91.4 .................................................................................................. 4

13 NYCRR § 91.5 ............................................................................................. 4, 14

13 NYCRR § 92.3 (2003) ..................................................................................... 4

Defendant Eric T. Schneiderman, in his capacity as the Attorney General of the State of New York ("Attorney General"), respectfully submits this memorandum of law in opposition to Plaintiffs' motion for a preliminary injunction (ECF No. 7).[1]

## PRELIMINARY STATEMENT

This action concerns a facial and as-applied challenge to the constitutionality of New York's annual reporting requirements for charitable organizations. Specifically, Plaintiffs Citizens United and Citizens United Foundation, two nonprofit organizations, object to New York's mandate that they submit copies of Schedule B to IRS Form 990 because the schedule identifies their major contributors. Plaintiffs now ask this Court—eleven years since New York law has required the submission of Schedule B, and more than a year after the Attorney General notified Plaintiffs that their annual filings were deficient for failing to include Schedule B—for the extraordinary relief of a preliminary injunction against the Attorney General's enforcement of this long-standing reporting requirement. Plaintiffs' requested relief should be denied.

Plaintiffs have no likelihood of succeeding on their claims that New York's registration and reporting requirements for charitable organizations violate the First Amendment, the Due Process Clause, the New York State Administrative Procedure Act, or are otherwise preempted by federal law. Contrary to Plaintiffs' assertions, the Schedule B requirement—which applies to *every* charitable organization regardless of the content of its solicitations—is a valid exercise of the Attorney General's broad supervisory powers over charitable operations in the State, directly furthers New York's substantial interest in protecting the public welfare, and does not impermissibly infringe on Plaintiffs' First Amendment rights. Plaintiffs' attempts to bootstrap their claims upon the purported subjective "chill" on theirs and their donors' associational rights

---

[1] The Attorney General also respectfully submits the accompanying Declaration of Assistant Attorney General Karin Kunstler Goldman, dated July 23, 2014 ("Goldman Decl."), along with the exhibits annexed thereto, in opposition to Plaintiffs' motion.

fare no better since Plaintiffs have not shown the credible threat of reprisals or harassment necessary to state a cognizable First Amendment claim.  Furthermore, the regulation requiring organizations to submit contributor information is clear and unambiguous on its face, and was duly promulgated after fulsome notice-and-comment procedures, and thus its enforcement does not violate due process or the New York State Administrative Procedure Act.  Nor is New York's reporting requirement preempted by federal statutes providing for the Internal Revenue Service's confidentiality obligations with respect to federal tax returns.

Additionally, Plaintiffs have failed to demonstrate that they will suffer irreparable harm absent a preliminary injunction because they cannot establish any *prima facie* constitutional violation.  Finally, the balance of the equities and the public interest weigh strongly against Plaintiffs because enjoining the enforcement of the Schedule B reporting requirement would interfere with the Attorney General's supervision and regulation of charitable organizations in the State of New York.  Accordingly, Plaintiffs' motion should be denied in its entirety.

## **FACTUAL BACKGROUND**

The Attorney General, through the Charities Bureau (the "Bureau"), is responsible for the supervision of all charitable operations in New York.  By statute, the Attorney General's oversight extends over charitable organizations who solicit funds in the State,[2] as well as foreign charitable nonprofits who do business or hold property in New York.  See N.Y. Exec. Law § 172(1); N.Y. Estates, Powers and Trusts Law ("EPTL") § 8-1.4(a)(3).  Among the Bureau's myriad duties is to investigate donor or consumer complaints, and to ensure that funds and property held for charitable purposes are properly used.  Goldman Decl. ¶ 3.  The Attorney General is empowered to pursue a wide range of remedies to address violations of the charitable

---

[2] In general, charitable solicitation in New York is governed by Article 7-A of the New York Executive Law.  See N.Y. Exec. Law §§ 171-a to 177.

solicitation laws:  he may commence proceedings to enjoin unlawful conduct, seek damages and restitution, impose civil penalties and costs, and may, upon notice, cancel a charitable organization's registration.  See N.Y. Exec. Law §§ 175, 177; N.Y. EPTL § 8-1.4(h)-(m).

## A.        The Internal Revenue Service's Requirements for Tax-Exempt Nonprofits

Nonprofit organizations must apply for and be granted tax-exempt status by the United States Internal Revenue Service ("IRS").  See generally 26 U.S.C. § 501.  Depending on an organization's mission and planned activities, it may choose to organize under different provisions of the federal Internal Revenue Code ("IRC").[3]  In general, organizations exempt under IRC § 501(c)(3) and § 501(c)(4) that meet certain gross receipt and asset thresholds must annually file with the IRS a complete Form 990 in order to maintain their tax-exempt status.  See IRS, "2008 Instructions to Form 990," at 3 (attached as Ex. A to Goldman Decl.).

Although the IRS is required to maintain in confidence certain tax return information, federal law directs the IRS to make Forms 990 for § 501(c)(3) and § 501(c)(4) organizations— with the exception of the names and addresses of their contributors—available for public inspection.  See 26 U.S.C. §§ 6103, 6104(d)(1), 6104(d)(3)(A); Schedule B to IRS Form 990 (2013), at 5 (attached as Ex. B to Goldman Decl.) (explaining IRS's disclosure obligations).

## B.        New York's Registration Requirements for Charitable Organizations

Like many of its sister states, New York mandates that nonprofits intending to solicit funds within the State must first register with the Attorney General, and then submit annual financial reports.  N.Y. Exec. Law §§ 172(1), 172-b(1).  Section 172-b(1) of the New York Executive Law and § 8-1.4(h) of the New York EPTL empower the Attorney General to

---

[3] For instance, IRC § 501(c)(3) organizations must generally be engaged in charitable efforts, and are generally restricted from political lobbying, whereas "social welfare organizations" organized under IRC § 501(c)(4) are permitted to be more actively involved in the political process, so long as such is not their primary activity.  See 26 U.S.C. §§ 501(c)(3), (4).

prescribe the specific form and content of the annual reports.  Pursuant to this statutory directive, the Attorney General promulgated detailed regulations governing registration and annual filing for charities in Title 13 of the New York Codes, Rules and Regulations ("NYCRR").  See 13 NYCRR § 91.4 (initial registration); § 91.5 (annual filing).  Under these regulations, a charitable organization's complete annual report consists of the CHAR500 (the Bureau's annual filing form), as well as schedules and attachments to the CHAR500.  13 NYCRR § 91.5(c).

The regulation at issue in this action, 13 NYCRR § 91.5(c)(3)(i)(a), requires that the CHAR500 be accompanied by "a copy of the complete IRS Form 990, 990-EZ or 990-PF with schedules."  This provision was promulgated in 2006 to replace a prior regulation that had required nonprofits to submit "IRS Form 990, 990EZ, or 990PF, including schedules A and B and any other schedules or statements required to be attached."[4]  See 13 NYCRR § 92.3(b)(2) (2003).  By replacing the phrase "IRS Form 990, . . . including schedules A and B" with "the complete IRS Form 990 . . . with schedules," the revised regulatory language at 13 NYCRR § 91.5(c)(3)(i)(a) accommodated the IRS's anticipated changes to the Form 990.  Goldman Decl. ¶ 9.  Before 2008, Form 990 had only two schedules:  Schedule A, which sought the basis for the organization's exempt status; and Schedule B, which sought the names and addresses of the organizations' major contributors.  See IRS, "2007 Instructions for Form 990," at 5 (attached as Ex. C to Goldman Decl.).  In 2008, however, the IRS released a new Form 990, accompanied by 14 new schedules.[5]  See IRS, "2008 Instructions for Form 990," at 1-2 (attached as Ex. A to

---

[4] The Attorney General proposed the promulgation of 13 NYCRR § 91.5 in March 2006, in a notice of proposed rule-making published in the New York State Register as part of a comprehensive set of proposed regulations intended to clarify filing procedures for charitable organizations.  2006-13 N.Y. St. Reg. 45-47 (Mar. 29, 2006).  On October 4, 2006, following a public notice-and-comment period, the proposal was duly promulgated with no changes.  2006-40 N.Y. St. Reg. 19 (Oct. 4, 2006).  The Bureau received no comments pertaining to the proposed language for § 91.5.  Id.

[5] IRS provided notice that it had been actively engaged in the process of revising Form 990 at

Goldman Decl.).

Both before and after the promulgation of 13 NYCRR § 91.5(c)(3)(i)(a), the Bureau consistently instructed charitable organizations to submit all schedules to IRS Form 990, including Schedule B, as part of their annual filing.  Goldman Decl. ¶ 6; see, e.g., Citizens United's 2005 CHAR500, at 5 and 2011 CHAR500, at 4 (attached as Exs. E & F to Goldman Decl., respectively).  While the Bureau generally makes a charitable organization's filings available to the public, its long-standing practice has been to maintain Schedules B in confidence, and the instructions on the CHAR500 expressly inform taxpayers that Schedule B is exempt from Freedom of Information Law ("FOIL") disclosures.  Goldman Decl. ¶¶ 14-16 & Ex. G ("Instructions for Form CHAR500: Annual Filing for Charitable Organizations"), at 6.

## C.    The Attorney General's Efforts to Identify Registration Deficiencies

Many tens of thousands of charitable organizations are registered with the Attorney General in New York.  Goldman Decl. ¶ 4.  In 2012, upon a review of its operations, the Bureau determined that although some charitable organizations filed complete annual registration statements, including full copies of their Schedules B as required, others did not.  Id. ¶ 17.  To better enforce New York's filing requirements, the Bureau thus implemented an across-the-board initiative to identify and notify registered organizations of their filing deficiencies.  Id. ¶ 18. Since 2012, the Bureau's established practice is to send deficiency notices to organizations that fail to submit the required Schedule B with their CHAR500, identifying the missing documentation.  Id.

Plaintiffs have been registered with the Attorney General since 1995.  Goldman Decl.

---

least as of June 2006, before the promulgation of 13 NYCRR § 91.5.  See IRS Advisory Committee on Tax Exempt and Government Entities, "Policies and Guidelines for Form 990 Revision," at 1 (June 7, 2006) (attached as Ex. D to Goldman Decl.) (stating that the IRS was "actively engaged in a revision of Form 990").

¶ 19.  During this time, while Plaintiffs have consistently filed annual CHAR500 forms with the Bureau, to which they attached other schedules to the Forms 990 filed with the IRS, they have not included full copies of their Schedules B.  Id. ¶ 20.  In April 2013, after receipt of Plaintiffs' fiscal year 2011 filings, the Bureau notified Plaintiffs of the filing deficiencies, and requested their submission of Schedules B.  Id. ¶ 21.  Plaintiffs did not comply.  Id.  Instead, more than a year later, this lawsuit followed.

## STANDARD OF REVIEW

Injunctive relief is "an extraordinary remedy" that should not be granted as a routine matter.  Monserrate v. N.Y. State Senate, 599 F.3d 148, 154 (2d Cir. 2010).  A motion for "a preliminary injunction against government action taken in the public interest pursuant to a statutory scheme" will be denied unless the movant can show:  (1) he will suffer irreparable harm without the injunction; (2) a likelihood of success on the merits of the underlying claim; (3) an injunction would be in the public interest; and (4) the balance of equities weighs in favor of granting the injunction.  Pope v. Cnty. of Albany, 687 F.3d 565, 570 & n.3 (2d Cir. 2012); see Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

## ARGUMENT

At issue in this action is a content-neutral statute and regulation that all charitable organizations intending to solicit funds in New York must make annual filings with the Bureau, including the organizations' complete IRS Form 990 with their schedules of major contributors. N.Y. Exec. Law § 172-b(1); 13 NYCRR § 91.5(c)(3)(i)(a).  As set forth below, Plaintiffs are not entitled to a preliminary injunction barring the Attorney General from enforcing this reporting requirement because they cannot satisfy any of the requisite elements for preliminary relief. Therefore, the instant motion should be denied.

I.    **PLAINTIFFS HAVE NO LIKELIHOOD OF PREVAILING ON THE MERITS BECAUSE THEIR CLAIMS FAIL AS A MATTER OF LAW**

A.    <u>**New York's Registration and Reporting Requirements for Charitable Organizations Do Not Violate the First Amendment**</u>

Plaintiffs contend that New York's reporting requirement is facially unconstitutional under the First Amendment because it constitutes impermissible "speech licensing," and is unconstitutionally vague in that it confers "unfettered discretion" upon the Attorney General. Plaintiffs further maintain that the Schedule B requirement is unconstitutional as applied to them based on their contributors' subjective desires for privacy. Pls.' Mem. in Supp. of Mot. for Prelim. Inj. ("Pls.' Br.") at 4-13. But these contentions find no support in fact or law.[6]

A facial challenge must be rejected where the statute at issue "has a plainly legitimate sweep." <u>Wash. State Grange v. Wash. State Republican Party</u>, 552 U.S. 442, 449 (2008) (internal quotes omitted). And it is well-settled that although the solicitation of charitable donations is speech protected by the First Amendment, such is nevertheless "undoubtedly subject to reasonable regulation." <u>Vill. of Schaumburg v. Citizens for Better Env't</u>, 444 U.S. 620, 632 (1980); <u>accord</u> <u>Riley v. Nat'l Fed'n of the Blind</u>, 487 U.S. 781, 789 (1988); <u>Sec'y of State of Md. v. Munson Co.</u>, 467 U.S. 947, 959-60 (1984). Courts consistently view registration and reporting mandates as disclosure requirements, subject to intermediate, or "exacting scrutiny." <u>See, e.g.</u>, <u>Nat'l Org. for Marriage v. McKee</u>, 649 F.3d 34, 54-55 (1st Cir. 2011) (statutes which

---

[6] Initially, to the extent Plaintiffs suggest that they do not qualify as "charitable organizations" under Article 7-A, and thus need not register at all, <u>see</u> Pls.' Br. at 6 n.1, such an argument borders on frivolous. Article 7-A defines a "charitable organization" as "[a]ny benevolent, philanthropic, patriotic, or eleemosynary person or one purporting to be such." N.Y. Exec. Law § 171-a(1). The relevant regulations further include "educational" organizations, as well as those "promoting social welfare" or "for a public benefit" as "charitable" for Article 7-A purposes. <u>See</u> 13 NYCRR § 90.1. Plaintiffs are plainly within the scope of Article 7-A's reach. <u>See</u> Aff. of David N. Bossie, dated May 19, 2014 (attached to Compl.) ("Bossie Aff.") ¶¶ 2-4 (stating the missions of Plaintiffs are to promote "traditional American values," to "inform the American people about public policy issues relating [thereto]," and to "educate the public").

"require the divulgence of information to the public or to [a state agency], but do not directly limit speech" are "effectively disclosure laws" subject to "exacting scrutiny"); SpeechNow.org v. Fed. Election Comm'n, 599 F.3d 686, 696-98 (D.C. Cir. 2010) (analyzing political committee reporting laws as disclosure mandates).  Under these established standards, such requirements do not violate the First Amendment so long as the required disclosure or reporting obligation bears "substantial relation" to a "sufficiently important governmental interest."  Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 366-67 (2010) (internal quotes omitted).

     **1.  The challenged reporting requirement is directly related to a substantial interest in enforcing State laws.**

The Supreme Court has expressly held, in the face of a First Amendment challenge, that the government's interest in gathering information for the purpose of determining whether its laws are potentially being violated is sufficiently important to justify a reporting and disclosure requirement.  Buckley v. Valeo, 424 U.S. 1, 67-68 (1976) ("[R]ecordkeeping, reporting, and disclosure requirements are an essential means of gathering the data necessary to detect violations of the [campaign finance laws]."); see also Ctr. for Competitive Politics v. Harris, No. 14-cv-636, 2014 U.S. Dist. LEXIS 66512, at *17-20 (E.D. Cal. May 13, 2014) (rejecting a First Amendment challenge to California's donor reporting requirement because the California Attorney General's "interest in performing her regulatory and oversight function as delineated by state law is compelling and substantially related to the disclosure requirement").  Further, courts have consistently deemed a government's interest in protecting its citizens from solicitation fraud to be sufficiently important in the First Amendment context.  See Schaumburg, 444 U.S. at 636 (interest in "protecting the public from fraud, crime and undue annoyance" in the context of charitable solicitations is "substantial") (internal quotes omitted); Riley, 487 U.S. at 792 (same).

The legislative purpose behind New York's registration and annual reporting

requirements, as set forth in Article 7-A of the Executive Law, is to empower the Attorney

General to exercise oversight over charitable organizations who solicit funds in the State, to

enforce the State's charitable solicitation laws, and to protect the public interest.  See Nat'l

Awareness Found. v. Abrams, 50 F.3d 1159, 1162, 1166 (2d Cir. 1995) (citing the district court's

conclusion that "New York's regulation of all charitable fundraisers and organizations was

devised to protect the public from unsupervised fundraising activities and that the system was

tailored to serve the particular government interests in regulating [] charitable organizations" in

affirming dismissal of First Amendment claim) (internal quotes omitted); Viguerie Co. v.

Paterson, 94 A.D.2d 672, 673 (N.Y. App. Div. 1983) ("The [Attorney General] is charged by law

with the enforcement of the provisions of Article 7-A in the exercise of the State's police power,

to prevent fraud and safeguard the public welfare in respect to charitable solicitations.").

New York's requirement that charitable organizations make detailed financial and

operational disclosures to the Attorney General, including reporting information about

contributors, is directly related to these same important interests—to determine compliance with

State laws, to ensure that organizations are not abusing their charitable and exempt designations,

and ultimately to protect the public welfare.  Indeed, information concerning the sources of

funding for nonprofits may help the Bureau to identify organizations operating as sham charities

or as vehicles for tax evasion.  Such interests are sufficiently substantial to justify the limited

First Amendment burden imposed by the disclosure, and thus the challenged reporting

requirement is plainly constitutional on its face under the requisite "exacting scrutiny."[7]  See,

---

[7] Insofar as Plaintiffs suggest that the Attorney General is only entitled to information about an
organization's New York activities or donors, Pls.' Br. at 7 & n.3, neither the First Amendment nor any
other rule of law imposes any such limit.  On the contrary, demanding broad disclosures concerning all of
a charity's activities, irrespective of the geographic situs, is directly related to New York's legitimate
interest in ferreting out potential unlawful activity and protecting its residents by ensuring that
wrongdoers are not allowed to solicit funds here.

e.g., Buckley, 424 U.S. at 67-72 (upholding disclosure requirement against First Amendment challenge); Am. Target Adver., Inc. v. Giani, 199 F.3d 1241, 1248 (10th Cir. 2000) ("Mandatory registration and disclosure [requirements] . . . directly promote Utah's legitimate interest in combating fraud while not unnecessarily interfering with solicitors' protected speech."); see also Abrams v. N.Y. Found. for Homeless, Inc., 148 Misc. 2d 791, 794-95 (N.Y. Sup. Ct. 1990) ("The mere fact that a charitable group claims First Amendment privileges cannot shield that group from the scrutiny of the Attorney-General.").

Nonetheless, Plaintiffs maintain that the Attorney General "cannot assert an interest in public disclosure" because he does not purport to disclose Schedules B to the public, and the reporting requirement is thus constitutionally deficient. Pls.' Br. at 7. But of course, that public disclosure has been deemed by the Supreme Court to be *one* significant governmental interest does not mean that such is the *only* interest that can justify the constitutionality of a registration and reporting mandate. See, e.g., Buckley, 424 U.S. at 66-68 (the government's interests in public disclosure and collecting information to detect violations of law are both "sufficiently important to outweigh the possibility of [First Amendment] infringement"). Thus, the fact that the Attorney General does not disclose Schedules B to the public does not in any way impact the First Amendment analysis.

Nor does New York's ability to obtain copies of Plaintiffs' Schedules B directly from the IRS pursuant to 26 U.S.C. § 6104 in any way undermine these important interests, as Plaintiffs suggest, see Pls' Br. at 9. Rather, that 26 U.S.C. § 6104(c)(3) expressly contemplates the IRS's provision of returns information to state officials, notwithstanding the general confidentiality of such information, see infra Part I.D, further reinforces the straightforward conclusion that states

have sufficiently important enforcement interests in possessing the underlying information.[8] Plaintiffs have cited no authority for the contrary.

Very recently, a district court in the Eastern District of California also arrived at this same conclusion.  See Ctr. for Competitive Politics, 2014 U.S. Dist. LEXIS 66512, at *14-21 (denying preliminary injunction upon finding plaintiff was not likely to succeed on merits of its First Amendment claim).  There, in rejecting a First Amendment challenge brought by a § 501(c)(3) charity seeking to enjoin enforcement of California's requirement that charities submit Schedules B in order to be able to solicit funds, the district court found that the request for donor information was "justified by a legitimate law enforcement purpose pursuant to [the California Attorney General's] role as the chief regulator of charitable organizations in the state." Id. at *17-18.  New York's identical reporting requirement should similarly be upheld here.

### 2. Neither Schaumburg nor any other case cited by Plaintiffs compels a different conclusion.

In challenging New York's reporting requirement, Plaintiffs rely primarily on Schaumburg, purportedly for the proposition that requiring charitable organizations to submit to the Attorney General a schedule of contributors is impermissible "speech licensing."  Pls.' Br. at 5-8.  However, Plaintiffs' reliance on Schaumburg is misplaced.

---

[8] Further, Plaintiffs' assertion that the Attorney General's Schedule B reporting requirement is unconstitutional because it is not the "least intrusive method for vindicating its interests" is wrong as a matter of law.  Pls.' Br. at 8.  As a threshold matter, this is not the correct legal standard for evaluating the constitutionality of a disclosure requirement.  See supra at 7-8; Public Citizen, Inc. v. Pinellas Cnty., 321 F. Supp. 2d 1295, 1297 (M.D. Fla. 2004) ("A challenged ordinance need not constitute the 'least restrictive' or 'least intrusive' means of obtaining the legislative objective" to pass constitutional muster).  And in any event, that the Attorney General has chosen a less intrusive way to vindicate his important law enforcement interests—by requiring disclosure of donor information, but maintaining such in confidence, see Goldman Decl. ¶¶ 14-16—does not alter the underlying constitutionality of his actions, especially if the more intrusive means of public disclosure has already been condoned by the Supreme Court.  See infra Part I.A.2; Citizens United, 558 U.S. at 367; see also Ctr. for Competitive Politics, 2014 U.S. Dist. LEXIS 66512, at *20-21 (California's Schedule B reporting requirement is "narrowly tailored" because Schedule B is not disclosed publicly); Public Citizen, 321 F. Supp. 2d at 1303 ("The charities cite no authority, and none otherwise appears, that a [] solicitation ordinance lacks narrow tailoring because [it] requests information available from the state, a federal agency, or any other source.").

The ordinance in <u>Schaumburg</u> is in no way analogous to the reporting requirement before the Court.  At issue in <u>Schaumburg</u> was a local ordinance that required charitable organizations, after being duly registered with the State of Illinois, to obtain a local permit before soliciting donations within the village's boundaries.  444 U.S. at 623-24.  The challenged ordinance further conditioned the issuance of the solicitation permit on proof that more than 75% of solicited funds would be directly used for charitable, as opposed to administrative, purposes.  <u>Id.</u> at 624.  After finding the village's proffered interest in preventing fraud and protecting the public welfare to be "indeed substantial," the Court nevertheless concluded that high administrative costs were a vastly imprecise indicator of fraud, and thus invalidated the challenged ordinance on the grounds that it was "insufficiently related to the governmental interests asserted in its support to justify its interference with protected speech."  <u>Id.</u> at 636, 639.  Critically, however, in reaching this conclusion that the government's "legitimate interest in preventing fraud can be better served by measures less intrusive than a direct prohibition on solicitation," the <u>Schaumburg</u> Court cited with approval to Illinois's general disclosure and registration requirements for charitable organizations, suggesting that these mandates were constitutionally permissible means to achieve such governmental interests.  <u>Id.</u> at 637-38 & n.12.  Thus, contrary to Plaintiffs' assertions, <u>Schaumburg</u> in fact supports the constitutionality of 13 NYCRR § 91.5.

Additionally, although the Supreme Court has not directly passed upon a First Amendment challenge to a state's generally applicable requirement that charities must register with the state by filing financial and other information, its decisions have nevertheless implicitly acknowledged such regulatory schemes to be constitutionally permissible.  <u>See</u> <u>Illinois ex rel. Madigan v. Telemarketing Assocs.</u>, 538 U.S. 600, 623 (2003) ("In accord with our precedent . . . in almost all of the states and many localities, charities and professional fundraisers must register

12

and file regular reports on activities.") (internal quotes and citations omitted); <u>Munson</u>, 467 U.S. at 967 n.16 ("[C]oncerns about fraudulent charities, can and are accommodated directly, through disclosure and registration requirements").  Indeed, because "disclosure is a less restrictive alternative to more comprehensive regulations of speech," <u>Citizens United</u>, 558 U.S. at 369, laws that condition protected speech upon clearly set forth disclosure and reporting requirements have been uniformly upheld on First Amendment grounds.  <u>See id.</u> at 369-71 (collecting cases); <u>Am. Target Adver.</u>, 199 F.3d at 1248 ("The Supreme Court has indicated that registration and disclosure provisions do not raise First Amendment problems."); <u>Public Citizen, Inc. v. Pinellas Cnty.</u>, 321 F. Supp. 2d 1275, 1297 (M.D. Fla. 2004) (local ordinance requiring charities to submit detailed information about finances, operations and activities to county did not impermissibly burden speech rights); <u>see also</u> <u>Ctr. for Individual Freedom v. Madigan</u>, 697 F.3d 464, 470 & n.1 (7th Cir. 2012) ("[I]n the aftermath of <u>Citizens United</u> a number of suits have been filed challenging federal and state disclosure regulations as facially unconstitutional.  Of the federal courts of appeals that have decided these cases, every one has upheld the disclosure regulations against the facial attacks.").  In this case, the clear weight of precedent similarly compels the conclusion that New York's reporting requirement is constitutional on its face.

### 3.  The challenged reporting requirement is not void-for-vagueness.

Plaintiffs also contend that New York's long-standing annual reporting requirement is unconstitutional because it confers "unfettered discretion" on the Attorney General.  This argument strains credibility.  The void-for-vagueness doctrine prohibits statutes that are, *inter alia*, "so standardless that it authorizes or encourages seriously discriminatory enforcement." <u>Ctr. for Individual Freedom</u>, 697 F.3d at 479 (quoting <u>Fed. Comm'cns Comm'n v. Fox Television Stations, Inc.</u>, 132 S. Ct. 2307, 2317 (2012)).  Here, however, the requirements set

forth in N.Y. Exec. Law § 172-b(1) and 13 NYCRR § 91.5 are clear and unambiguous.

Article 7-A authorizes the Attorney General to prescribe the required forms for a charitable organization's annual filing, see N.Y. Exec. Law § 172-b(1), and the implementing regulation in turn clearly identifies the required forms—including the organization's "complete Form 990 . . . with schedules," 13 NYCRR § 91.5(c)(3)(i)(a).  There is thus no vagueness problem with the challenged regulation.  Cf. City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 769-70 (1988) (statute was unconstitutional where it authorized mayor to subject speech to "other [unspecified] terms and conditions deemed necessary and reasonable"); Am. Target Adver., 199 F.3d at 1251-52 (catch-all provision permitting official to request "any additional information the division may require" as condition of granting permit rendered statute void-for-vagueness).  Nor does Article 7-A permit the Attorney General unbounded discretion to cancel or revoke a charitable organization's registration.  See generally N.Y. Exec. Law §§ 175, 177 (providing that the Attorney General may cancel an organization's registration for violations of Article 7-A, including for noncompliance with filing requirements); Public Citizen, 321 F. Supp. 2d at 1292 (provision that "the director 'may' deny, suspend, or revoke a permit for 'any violation of the ordinance'" not void-for-vagueness where specific rules governed what constituted violations) (internal quotes omitted).  Here, that Plaintiffs do not want to comply with the clear reporting mandates prescribed by 13 NYCRR § 91.5(c) does not render the regulation constitutionally infirm on vagueness grounds.

### 4. Plaintiffs cannot establish a cognizable First Amendment claim based on their donors' subjective desire for privacy.

Finally, Plaintiffs' claim that the Schedule B requirement infringes on their and their contributors' First Amendment associational rights is similarly unavailing.  Although the compelled disclosure of a group's members may be susceptible to an as-applied challenge on

First Amendment grounds, such a claim is cognizable only where the group can "show a 'reasonable probability' that disclosure of its contributors' names 'will subject them to threats, harassment, or reprisals from either Government officials or private parties.'" Citizens United, 558 U.S. at 367 (quoting McConnell v. Fed. Election Comm'n, 540 U.S. 93, 198 (2003)); see also Ctr. for Individual Freedom, 697 F.3d at 498 ("[F]oregone speech from those who wish to remain anonymous . . . is regrettable, but it is the Center's and its donors' choice to make.").

Indeed, the Supreme Court has previously rejected the same claims Plaintiffs attempt to resurrect here:

> Citizens United argues that disclosure requirements can chill donations to an organization by exposing donors to retaliation. . . . Citizens United, however, has offered no evidence that its members may face [] threats or reprisals. To the contrary, Citizens United has been disclosing its donors for years and has identified no instance of harassment or retaliation.

Citizens United, 558 U.S. at 370. In this case, the wholesale absence of *even an allegation* that disclosure of their identities to the Attorney General will subject the contributors to *any* threats of harassment, reprisals, or physical coercion—let alone any "reasonable probability" thereof—is necessarily fatal to Plaintiffs' First Amendment claim. See Doe v. Reed, 561 U.S. 186, 200-01 (2010) (public disclosure of name and addresses of signatories to referendum petitions does not ordinarily create "reasonable probability" of harassment); Ctr. for Individual Freedom, 697 F.3d at 482-83 (rejecting associational claim where plaintiffs provided "scant evidence or argument, beyond bare speculation" that public disclosure would "at all likely to precipitate 'threats, harassment, or reprisals'"); cf. NAACP v. Alabama, 357 U.S. 449, 462 (1958) (compelled disclosure violated First Amendment based on "uncontroverted showing that on past occasions" disclosure of members' identities "exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility").

15

Aside from Plaintiffs' conclusory and generalized allegations that certain contributors have purportedly withheld donations based on fears that the contributors' identities will be "disclosed publicly,"[9] Plaintiffs have presented no showing sufficient to give rise to any cognizable First Amendment claim.  See Bossie Aff. ¶¶ 9-12 (alleging merely that donors have expressed "concerns" about public disclosure).  Just as was the case in Ctr. for Competitive Politics, Plaintiffs here have not "articulated any, objective specific harm that will result to its members if [the Attorney General] is permitted to require that Plaintiff produce an unredacted copy of its Schedule B."  2014 U.S. Dist. LEXIS 66512, at *19.  Plaintiffs' bare suggestion that compliance with the reporting requirement will threaten their sources of funding is thus insufficient to establish a *prima facie* First Amendment violation.  Id.

In sum, because Plaintiffs' First Amendment claims are fatally deficient as a matter of law, they cannot prevail on the merits of these claims and thus are not entitled to any relief, preliminary or otherwise.

### B.  **Plaintiffs Have No Cognizable Claim That Due Process Has Been Violated**

Plaintiffs make two separate due process arguments regarding 13 NYCRR § 91.5(c)— that requiring Schedule B is a new interpretation of the regulation made without notice, and that,

---

[9] Critically, insofar as Plaintiffs' claim that their donors' "chilled" speech (or associational rights) is premised on the fear of *public* disclosure of the donors' identities, see Bossie Aff. ¶ 9 (potential major donor "wanted to know whether if he did donate, his identity would remain confidential and not be made public"), Plaintiffs lack Article III standing to pursue such a claim.  Plaintiffs' attempt to conflate disclosure to the Bureau with public disclosure is supported by nothing more than sheer speculation.  Rather, on the undisputed record before the Court, contributor information disclosed to the Bureau is maintained in confidence and is, consistent with its long-standing policy and practice, exempted from FOIL requests and public disclosure.  See Pls.' Br. at 7 (acknowledging that the Bureau states that it "does not disclose Schedule B to the public"); Goldman Decl. ¶¶ 14-16.  Thus, Plaintiffs cannot establish that the injury claimed in this case—the "chill" flowing from the *public* disclosure of donor identities—is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," sufficient to satisfy the "irreducible constitutional minimum" of Article III standing.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal quotes omitted); Latino Officers Ass'n v. Safir, 170 F.3d 167, 170 (2d Cir. 1999) ("Allegations of a subjective chill of First Amendment rights are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.") (quoting Laird v. Tatum, 408 U.S. 1, 13-14 (1972)) (internal quotes and alterations omitted).

alternatively, the Bureau's enforcement of the Schedule B requirement in 2012 violated due process even if the interpretation has been consistent.  Neither is tenable.

### 1. Plaintiffs cannot claim that the Schedule B requirement in § 91.5(c) has been promulgated without notice in violation of due process.

Plaintiffs cite no evidence whatsoever—none of the Bureau's filing instructions, for example, and no statements by the Attorney General—to support their contention that the Schedule B requirement constitutes a novel interpretation of 13 NYCRR § 91.5(c).  See Pls.' Br. at 13-16 (citing only the regulation and inapplicable case law).  In stark contrast to this naked assertion is not only the unambiguous language of the regulation, but also the regulation's history, the Bureau's express instructions, and the Plaintiffs' own conduct, all of which make clear that Schedule B has been a filing requirement for more than a decade.

The language of § 91.5(c)(3)(i)(a)—which was made available for public comment before the regulation's promulgation in October 2006—unambiguously states that a charitable organization's annual filing "must include . . . a copy of the complete IRS Form 990, 990-EZ or 990-PF with schedules."  See supra at 4 n.4 (describing promulgation of regulation).  Plaintiffs attempt to contort this plain language into an alternative reading—that the phrase "with schedules" refers only to those schedules for IRS Form 990-PF, but not to Forms 990 or 990-EZ.  Pls.' Br. at 15 n.8.  This proffer is unsupportable, especially as it would be contrary to the regulation's prescription that "the *complete* IRS Form 990" be submitted.  13 NYCRR § 91.5(c)(3)(i)(a) (emphasis added).  It is "axiomatic" that courts apply "a sensible and practical over-all construction" to a statute or regulation, "especially when an opposite interpretation would lead to an absurd result."  Long v. Adirondack Park Agency, 76 N.Y.2d 416, 420 (1990).  Accordingly, because an organization's submission of Form 990 to the IRS would not be "complete" without the requisite schedules, the only sensible reading is that the word "complete"

and the phrase "with schedules" apply equally to Forms 990, 990-EZ, and 990-PF.

The last antecedent doctrine—Plaintiffs' only basis upon which they seek to trump the plain regulatory language and common sense—does not support their reading.  According to that doctrine, relative or qualifying words or clauses are generally applied to the immediately preceding words or phrases, unless the intent clearly indicates otherwise.  Long, 76 N.Y.2d at 424.[10]  The last antecedent doctrine is "more guideline[] than absolute rule[]."  Finisar Corp. v. DirecTV Group, Inc., 523 F.3d 1323, 1336 (Fed. Cir. 2008).  And the doctrine is consistently rejected where the intent of the language is clearly otherwise—including by the New York Court of Appeals in Long, a case cited by Plaintiffs.  76 N.Y.2d at 420; see also Kehoe v. Fid. Fed. Bank & Trust, 421 F.3d 1209, 1215 (11th Cir. 2005) (rejecting last antecedent rule in light of common sense); Demko v. United States, 216 F.3d 1049, 1053 (Fed. Cir. 2000) ("[T]he [last antecedent] doctrine would not control in this case because it would create an absurd result.").  Thus, the last antecedent doctrine is of no assistance to Plaintiffs because even if it did apply to § 91.5(c), the doctrine would yield to common sense and the clear language of the regulation.[11]

This plain reading of the Schedule B requirement in § 91.5(c) is further supported by the

---

[10] The statutes and contracts at issue in the case law cited by Plaintiffs, in contrast with § 91.5(c), involved considerable ambiguity, where courts had to examine clauses in the preceding sentences of the document in order to determine what the terms "these" and "such"  modified.  See, e.g., Duane Reade, Inc. v. Cardtronics. LP, 54 A.D.3d 137, 141 (N.Y. App. Div. 2008) (interpreting "these" by looking to last antecedents in prior sentences in contract); DaimlerChrysler Corp. v. Spitzer, 26 A.D.3d 88, 91 (N.Y. App. Div. 2005) (interpreting "such"); Remba v. Fed'n Emp't & Guidance Serv., 149 A.D.2d 131, 137 (N.Y. App. Div. 1989) (same).

[11] Plaintiffs argue in a footnote that applying the schedules requirement only to IRS Form 990-PF makes sense because only private foundations must make their donors publicly known under 26 U.S.C. § 6104(d)(3)(A).  Pls.' Br. at 15 n.8.  Section 6104(d), however, governs the IRS's disclosure obligations to the public of IRS Form 990-PF, not a taxpayer's disclosure obligations or privileges.  And in any event, New York's Schedule B requirement, and the Bureau's policy of exempting Schedules B from FOIL requests, is entirely consistent with this federal provision.  See Goldman Decl. Ex. G (Instructions to Form CHAR500), at 6 (noting that Schedule B to IRS Form 990 or 990-EZ is exempt from disclosure under both FOIL and the U.S. Freedom of Information Act, while Schedule B to IRS Form 990-PF is not exempt from disclosure under these provisions).

regulatory history.  The regulation that predated § 91.5(c) provided that charitable organizations were obligated to submit to the Bureau "IRS form 990, 990EZ, or 990PF, including schedules A and B and any other schedules or statements required to be attached."  13 NYCRR § 92.3(b)(2) (2003).  The Schedule B requirement thus dates to at least 2003, not 2012, as argued by Plaintiffs.  The revision of the language in 2006 to "the complete IRS Form 990 . . . with schedules," merely gave the Bureau flexibility to accommodate the IRS's changes to Form 990. Goldman Decl. ¶¶ 9-11; see supra at 4-5.

The Attorney General has consistently and expressly underscored that the phrase "with schedules" in § 91.5(c) applies equally to IRS Form 990, and that "with schedules" includes Schedule B.  The instructions on the CHAR500 forms have specifically enumerated Schedule B among the documents that must be attached to the submission.  See Goldman Decl. ¶ 12 & Exs. E & F (Citizens United's 2005 and 2011 CHAR500 Forms).  Indeed, Plaintiffs themselves clearly understood that the term "with schedules" applied to Form 990:  they have included other IRS Form 990 schedules with their CHAR500 filings, except Schedules B.  Goldman Decl. ¶ 20 & Ex. F (Citizens United's 2011 CHAR500 Form).

### 2.  The Attorney General's effort to identify Schedule B filing deficiencies is a proper application of State regulatory authority.

Plaintiffs challenge, in the alternative, the Attorney General's increased effort in 2012 to identify Schedule B filing deficiencies, but this due process claim is meritless.  An agency's enforcement decision is "'generally committed to an agency's absolute discretion,' which courts are particularly ill-equipped to review."  Leland v. Moran, 80 Fed. Appx. 133, 135 (2d Cir. 2003) (quoting Heckler v. Chaney, 470 U.S. 821, 831 (1985)) (rejecting due process challenge to agency's enforcement of local ordinances and state laws).  To the extent Plaintiffs suggest that the Schedule B requirement in § 91.5(c) became inoperative in its entirety because of an alleged

period of nonenforcement, Pls.' Br. at 13, the law is clear that principles of laches or estoppel do not bar government agencies from enforcing regulations, even when they "have been allowed to lie fallow."  Clear Channel Outdoor, Inc. v. City of N.Y., 594 F.3d 94, 110-11 (2d Cir. 2010) (criticizing plaintiffs for litigating "a self-inflicted wound" in "seek[ing] to justify continued violation by citing a prior history of lax enforcement") (internal quotes omitted).

The only authority cited by Plaintiffs, Fed. Commc'ns Comm'n v. Fox Television Stations, Inc., 132 S. Ct. 2307, is inapposite.  Pls.' Br. at 13-14.  There, the FCC had expressly stated that it would apply one interpretation of a regulation, and then subsequently and "abrupt[ly]," without adequate notice, applied a different one.  132 S. Ct. at 2318.  By contrast, the Attorney General's interpretation of the regulation has been consistent, as evidenced by the CHAR500's annual instructions regarding the submission of schedules, see supra at 5, thereby providing Plaintiffs and other charitable organizations with ample, and constitutionally adequate, notice regarding the filing requirements of § 91.5(c).[12]

**C.  The Regulation Does Not Violate the State Administrative Procedure Act**

Because § 91.5's requirement of the submission of Schedule B does not impose a new rule, it necessarily follows that the Attorney General's enforcement of the requirement does not violate the New York State Administrative Procedure Act ("SAPA").  See Elcor Health Servs. v. Novello, 100 N.Y.2d 273, 279 (2003) (agency does not violate SAPA where the challenged action resulted from an interpretation of a regulation, as opposed to implementation of a new, unpromulgated rule).  SAPA § 202(1)(a) mandates that rules and regulations undergo notice-and-comment procedure before promulgation.   Here, 13 NYCRR § 91.5 was proposed in March

---

[12] Plaintiffs state in a footnote, without explanation, that enforcement of the regulation without notice would create a "reputational stigma" for the organizations, posing a separate due process harm. Pls.' Br. at 14 n.7.  Because Plaintiffs cannot establish a due process violation, see supra Part I.B.1, they have no claim for this unexplained purported injury to their reputation.

2006, and was duly promulgated in October 2006 after notice-and-comment.  See supra at 4 n.4.

Plaintiffs have not challenged the validity of the promulgation of § 91.5 in 2006—nor could

they.  Thus, because the submission of Schedule B has always been mandated under § 91.5(c),

see supra at 5, there is no colorable SAPA claim.

### D.  Federal Law Has No Bearing on the Ability of State Agencies to Request Federal Tax Documentation from Charitable Organizations

Plaintiffs' final claim is that the federal Internal Revenue Code somehow precludes state

agencies from collecting the schedules to Form 990 directly from taxpayers.  Plaintiffs attempt to

claim conflict preemption, which arises when a conflict between local and federal law either

makes it impossible for a party to comply with both or creates an obstacle to the achievement of

federal objectives.  N.Y. SMSA Ltd. P'ship v. Town of Clarkstown, 612 F.3d 97, 104 (2d Cir.

2010).[13]  No such conflict exists between the IRC and New York's Schedule B requirement.

First of all, Plaintiffs mischaracterize the statutory bases for their preemption claim, 26

U.S.C. §§ 6103 and 6104, as a "general rule of non-disclosure" and as a "comprehensive system"

regulating such disclosure.  Pls.' Br. at 18.  On the contrary, the IRC governs only the disclosure

obligations of the IRS:  section 6103 establishes a general rule of confidential treatment of tax

returns by the IRS, while section 6104 obligates the IRS to make available for public inspection

the tax returns of certain tax-exempt organizations, excluding the names and addresses of

---

[13] Plaintiffs apparently concede, rightfully so, that federal law does not expressly preclude the challenged regulations.  See Pls.' Br. at 17-19 (limiting discussion to conflict preemption); N.Y. SMSA Ltd. P'ship, 612 F.3d at 104 (defining express preemption doctrine).  And while Plaintiffs suggest, without explicitly asserting, that field preemption applies here, any such suggestion is contrary to law, as field preemption is limited to areas that "Congress has legislated so comprehensively that federal law occupies an entire field of regulation."  N.Y. SMSA Ltd. P'ship, 612 F.3d at 104.  The Attorney General's collection of copies of federal tax returns, by contrast, is not subject to field preemption, especially where the federal statute in question expressly acknowledges that tax returns may benefit states in their regulation of "the solicitation or administration of . . . charitable funds."  26 U.S.C. § 6104(c)(3).  See Ctr. for Competitive Politics, 2014 U.S. Dist. LEXIS 66512, at *8-9 (California's Schedule B submission requirement was not subject either to express or field preemption).

contributors.  See 26 U.S.C. §§ 6103(a), 6104(d)(1), 6104(d)(3)(A).[14]  The legislative history of

§§ 6103 and 6104 makes clear that Congress intended these provisions to control the IRS's

disclosure of tax return information.  See Stokwitz v. United States, 831 F.2d 893, 894 (9th Cir.

1987) (concluding, after an exhaustive analysis of the legislative history, that "Congress's

overriding purpose [in enacting 26 U.S.C. § 6103] was to curtail loose disclosure practices *by the

IRS*") (emphasis added); Ctr. for Competitive Politics, 2014 U.S. Dist. LEXIS 66512, at *8-9

("The IRC only bars the *IRS* from providing the requested Schedule B to state agencies . . . .")

(emphasis in original).  Plaintiffs have failed to explain why a taxpayer's disclosure of tax

returns to a state agency conflicts with the IRC or otherwise constitutes an "end run" around the

"approved federal statutory process."  Pls.' Br. at 19.

Furthermore, the IRC expressly contemplates that state agencies may need copies of a

taxpayer's returns for the administration of state charitable solicitation laws.  26 U.S.C.

§ 6104(c)(3) provides that the IRS may make an organization's tax returns available to state

officers for "the administration of State laws regulating the solicitation or administration of the

charitable funds or charitable assets of such organizations."  This provision, of course, does not

purport to be exclusive, and Plaintiffs have cited no legal support for their contention that state

agencies *must* request tax documentation only from the IRS merely because § 6104(c)(3)

provides a mechanism by which they *may* request such documentation.  Indeed, the IRS has

acknowledged that some state agencies may very well request a copy of Schedule B directly

from taxpayers.  The IRS cautions that if taxpayers file a copy of Form 990 with any state, they

should not attach Schedule B "unless a schedule of contributors is *specifically required by the*

---

[14] Although Congress did indicate that the IRC should not require the IRS's "public disclosure" of donor information, as donors may want to donate privately, see Pls' Br. at 18 (citing S. Rep. 91-552, at 53 (Nov. 21, 1969)), no such concerns are implicated here in light of the Bureau's consistent policy of not publicly disclosing Schedules B.  See supra at 5.

*state*." Goldman Decl. Ex. B (Schedule B) at 5 (emphasis added).  The clear implication is that some states (such as New York) specifically request contributor information from taxpayers, and thus are more likely to have mechanisms in place (as New York does) to protect it.  Plaintiffs have no basis for claiming that New York's Schedule B requirement runs afoul of federal law.

## II.     PLAINTIFFS' WHOLLY CONCLUSORY ALLEGATIONS OF SUBJECTIVE "CHILL" AND THEIR UNDUE DELAY IN SEEKING RELIEF ARE INSUFFICIENT TO ESTABLISH IRREPARABLE HARM

A court must deny a preliminary injunction motion where the movant cannot show that it is likely to suffer an irreparable injury absent the requested injunction.  Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1999); see also Reuters, Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990) (irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction") (internal quotes omitted).  Irreparable harm "must be shown by the moving party to be imminent, not remote or speculative, and the alleged injury must be one incapable of being fully remedied by monetary damages."  Reuters, 903 F.3d at 907 (internal citations omitted).  While in some instances an alleged constitutional violation may establish irreparable injury for purposes of a preliminary injunction motion, see Elrod v. Burns, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms . . . unquestionably constitutes irreparable injury."), this rule does not help Plaintiffs for the simple reason that their First Amendment claims all fail as a matter of law.  See supra Part I.A.  Accordingly, Plaintiffs cannot establish an irreparable injury entitling them to injunctive relief.  See, e.g., Am. Postal Workers Union v. United States Postal Svc., 766 F.2d 715, 722 (2d Cir. 1985) (no irreparable injury where there is no First Amendment violation).

Moreover, a party's unreasonable delay in seeking relief weighs against the grant of the extraordinary remedy of a preliminary injunction.  See, e.g., Citibank, N.A. v. Citytrust, 756 F.2d 273, 276-77 (2d Cir. 1985) (affirming denial of preliminary injunction where plaintiff waited ten

weeks after learning of facts giving rise to claims to seek injunction); <u>K.F. v. Monroe Woodbury Cent. Sch. Dist.</u>, No. 12-cv-2200, 2012 U.S. Dist. LEXIS 60341, at *17 (S.D.N.Y. Apr. 30, 2012) (six-month delay "discredits Plaintiffs' notion that a preliminary injunction is necessary to prevent an irreparable harm"); <u>Ass'n of Legal Aid Attorneys v. City of N.Y.</u>, No. 96-cv-8137, 1997 U.S. Dist. LEXIS 15532, at *11-13 (S.D.N.Y. Oct. 8, 1997) (Stein, J.) (two-year delay warranted denial of preliminary injunction).  In this case, even taking Plaintiffs' allegations as true, they first became aware of the Schedule B requirement in April 2013, more than a year prior to the filing of the instant motion.  Nothing has changed in the interim.  Under these circumstances, Plaintiffs' inexplicable delay in bringing this action, coupled with the deliberate fashion with which they have proceeded thereafter,[15] plainly weighs against the extraordinary remedy of a preliminary injunction.  <u>See</u> <u>Gillette Co. v. Ed Pinaud, Inc.</u>, 178 F. Supp. 618, 622 (S.D.N.Y. 1959) ("By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action and cannot complain of the delay involved pending any final relief to which it may be entitled after a trial of all the issues.").

## III.  A PRELIMINARY INJUNCTION WOULD NOT SERVE THE PUBLIC INTEREST AND IS NOT SUPPORTED BY EQUITABLE CONSIDERATIONS

For Plaintiffs to succeed in obtaining a preliminary injunction, they must persuade the Court that such relief would serve the public interest and that the balance of equities weighs in their favor.  Plaintiffs have not made such a showing:  to the contrary, the equities and public interest counsel strongly against a preliminary injunction.  The only equitable interest identified by Plaintiffs is their contention that the Schedule B requirement poses a risk to their First Amendment rights—that without an injunction, their ability to solicit funds and their donors'

---

[15] Indeed, while the Complaint in this case was filed on or around May 22, 2014, Plaintiffs did not move for a preliminary injunction until nearly a month later, on or around June 16, 2014.  <u>See</u> ECF Nos. 2 & 7.  Furthermore, Plaintiffs did not serve the Attorney General with the Summons and Complaint, or with their preliminary injunction motion papers until July 2, 2014.  <u>See</u> ECF Nos. 10 & 11.

willingness to contribute will be impeded.  Pls.' Br. at 21-23.  But as detailed above, Plaintiffs have failed to make even a *prima facie* case of First Amendment infringement implicated by the enforcement of 13 NYCRR § 91.5(c).  See supra Part I.A.1.  Furthermore, Plaintiffs' extreme delay in seeking injunctive relief tips the balance of the equities against them.  See supra Part II.

By contrast, considerable equitable and public interest considerations warrant continued enforcement of the Schedule B requirement.  See N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health, 545 F. Supp. 2d 363, 368 (S.D.N.Y. 2008) ("The public interest . . . in enforcement of legislation enacted in the public interest, weigh[s] heavily against granting a stay of enforcement.").  As acknowledged both by Congress and the courts, a government has an interest in gathering financial and operational information from organizations purporting to engage in charitable activities.  See, e.g., 26 U.S.C. § 6104(c)(3) (state officials may obtain returns information from the IRS in order to regulate the solicitation and administration of charities); Schaumburg, 444 U.S. at 636 (acknowledging a state's "substantial" interest in protecting the public from fraudulent charitable solicitations); Ctr. for Competitive Politics, 2014 U.S. Dist. LEXIS 66512, at *22 (concluding that continued enforcement of the Schedule B requirement serves the public interest).  Enjoining enforcement of the Schedule B requirement would impair New York's ability to further these important public interests.

## CONCLUSION

For the reasons set forth above, the Attorney General respectfully requests that the Court deny Plaintiffs' instant motion for a preliminary injunction, together with such other and further relief as the Court deems just and proper.

Dated:  New York, New York
         July 23, 2014

Respectfully submitted,

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York

By:

*s/* Katherine B. Dirks
*s/* Linda Fang
Katherine B. Dirks
Linda Fang
Assistant Attorneys General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8610

26