UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
CITIZENS UNITED, and                                     :
CITIZENS UNITED FOUNDATION,                              :    No. 14-CV-3703 (SHS)
                                                         :
                          Plaintiffs,                    :
                                                         :    ECF Case
          -against-                                      :
                                                         :
ERIC SCHNEIDERMAN, in his official                       :
capacity as New York Attorney General,                   :
                                                         :
                          Defendant.                     :
------------------------------------------------------------------- X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DIMISS THE FIRST AMENDED COMPLAINT**


                                        ERIC T. SCHNEIDERMAN
                                        Attorney General of the State of New York
                                        120 Broadway, 24th Floor
                                        New York, New York 10271


Eva Dietz
Linda Fang
Assistant Attorneys General
  *of Counsel*


Dated: November 20, 2015

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

    A.    The Internal Revenue Service's Requirements for Tax-Exempt Nonprofits ............... 3

    B.    New York's Registration Requirements .............................................................. 4

    C.    The Bureau's Deficiency Notices ...................................................................... 5

PROCEDURAL HISTORY ..................................................................................................... 5

STANDARD OF REVIEW ...................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

I.    PLAINTIFFS FAIL TO STATE ANY VIABLE FIRST AMENDMENT CLAIM .............. 7

    A.    New York's registration and reporting requirements for charitable organizations do not constitute a prior restraint on protected speech. ....................................... 7

    B.    New York's Schedule B requirement is constitutional because it is directly related to the Attorney General's substantial interest in enforcing State law. ................... 8

    C.    Plaintiffs' wholly conclusory pleadings fall short of establishing a valid as-applied First Amendment claim. ................................................................................. 11

        1.    The Amended Complaint fails to establish that the Schedule B requirement has impermissibly chilled Plaintiffs' speech and associational rights by curtailing donations. ........................................................................................ 11

        2.    Plaintiffs still fail to establish that their provision of Schedule B to the Bureau will result in "threats, harassment or reprisals" for their contributors ................. 14

II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SAPA .................................... 16

    A.    Plaintiffs fail to identify any SAPA provisions that were violated. ...................... 17

    B.    Plaintiffs fail to establish that social welfare organizations in general or Citizens United in particular are not subject to charitable registration requirements ............. 17

III.    PLAINTIFFS FAIL TO STATE A FOURTEENTH AMENDMENT CLAIM ................ 20

    A.    Plaintiffs fail to allege a due process claim because the Schedule B requirement is not a policy change and Plaintiffs had fair notice of the requirement. ...................... 20

B.    Plaintiffs fail to allege a selective enforcement claim because they do not identify a
      similarly situated group that was treated differently or that they were subjected to
      impermissible considerations. ........................................................................................22

IV.    PLAINTIFFS FAIL TO STATE A CLAIM OF CONFLICT PREEMPTION ....................24

CONCLUSION .................................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

Am. Target Adver., Inc. v. Giani, 199 F.3d 1241 (10th Cir. 2000) ..........................................13

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ......................................................................7, 8, 16, 19

Bartels v. Inc. Vill. of Lloyd Harbor, No. 10 Civ. 5076 (PKC) (GRB),
    2015 U.S. Dist. LEXIS 43183 (E.D.N.Y. Feb. 18, 2015), adopted by 2015 U.S. Dist. LEXIS
    42750 (E.D.N.Y. Mar. 31, 2015) ..........................................................................................29

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ...................................................................... 8

Brown v. City of Oneonta, 221 F.3d 329 (2d Cir. 2000) ...........................................................28

Buckley v. Valeo, 424 U.S. 1 (1976) ........................................................................................12

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002) .................................................... 1

Citizens United v. Fed. Election Comm'n, 558 U.S. 310 (2010) ........................ 10, 11, 17, 19

City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432 (1985) ................................................28

City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750 (1988) .................................... 9, 10

Clear Channel Outdoor, Inc. v. City of N.Y., 594 F.3d 94 (2d Cir. 2010) ...............................27

Consol. Edison Co. v. Dep't of Envtl. Conservation, 71 N.Y.2d 186 (1988) ...........................24

Ctr. for Competitive Politics v. Harris, 784 F.3d 1307 (9th Cir. 2015), cert. denied,
    2015 U.S. LEXIS 7065 (Nov. 9, 2015)..............................................................11, 12, 13, 17, 32

Ctr. for Individual Freedom v. Madigan, 697 F.3d 464 (7th Cir. 2012).......................... 11, 18, 19, 20

Field Day, LLC v. Cnty. of Suffolk, 463 F.3d 167 (2d Cir. 2006)..............................................10

Heckler v. Chaney, 470 U.S. 821 (1985) ..................................................................................27

Hirsch v. Arthur Andersen & Co., 72 F.3d 1085 (2d Cir. 1995)................................................. 8

In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371 (S.D.N.Y. 2001) ...................... 8

Kajoshaj v. N.Y.C. Dep't of Educ., 543 Fed. Appx. 11 (2d Cir. 2013) .....................................16

LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester, 40 F.3d 587 (2d Cir. 1994) ...............28

Leary v. Civil Serv. Emp. Ass'n, No. 11 Civ. 716 (CS), 2012 U.S. Dist. LEXIS 65164
    (S.D.N.Y. May 9, 2012) ........................................................................................30

Lefkowitz v. John Wiley & Sons, No. 13 Civ. 6414 (KPF), 2014 U.S. Dist. LEXIS 75650
    (S.D.N.Y. June 2, 2014) ................................................................................. 16, 19

Leland v. Moran, 80 Fed. Appx. 133 (2d Cir. 2003) ........................................................27

Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12 (2d Cir. 1999) .............................28

Long v. Adirondack Park Agency, 76 N.Y.2d 416 (1990) .................................................26

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ................................................. 16, 17

N.Y. SMSA Ltd. P'ship v. Town of Clarkstown, 612 F.3d 97 (2d Cir. 2010)...........................30

NAACP v. Alabama, 357 U.S. 449 (1958) ......................................................................20

Nat'l Ass'n of Mfrs. v. Taylor, 582 F.3d 1 (D.C. Cir. 2008) ................................. 17, 18, 19, 20

Nat'l Org. for Marriage v. McKee, 649 F.3d 34 (1st Cir. 2011) ...........................................11

Norton v. Town of Brookhaven, 33 F. Supp. 3d 215 (E.D.N.Y. 2014)...................................29

Parkash v. Town of Southeast, 468 Fed. Appx. 80 (2d Cir. 2012) ........................................28

Perry v. Schwarzenegger, 591 F.3d 1147 (9th Cir. 2009) ..................................................15

Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996) ....................................................26

Rent Stabilization Ass'n v. Higgins, 83 N.Y.2d 156 (1993) .......................................... 21, 24

Riley v. Nat'l Fed'n of the Blind, 487 U.S. 781 (1988) .......................................................9

Stokwitz v. United States, 831 F.2d 893 (9th Cir. 1987) ...................................................31

Viguerie Co. v. Paterson, 94 A.D.2d 672 (1st Dep't 1983)................................................12

Vill. of Schaumburg v. Citizens for Better Env't, 444 U.S. 620 (1980) ............................. 9, 12

Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442 (2008) ............................9

Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC, No. 14 Civ. 9783 (PAE),
    2015 U.S. Dist. LEXIS 115610 (S.D.N.Y. Aug. 31, 2015)........................................ 1, 3, 15

**Statutes**

26 U.S.C. § 501 ..........................................................................................2, 3, 4, 18

26 U.S.C. § 6103 ................................................................................................... 4, 24

26 U.S.C. § 6104 ...........................................................................................................4

N.Y. Exec. Law § 171-a ...................................................................................4, 18, 19

N.Y. Exec. Law § 172 ....................................................................................................3

N.Y. Exec. Law § 172-a ...............................................................................................19

N.Y. Exec. Law § 172-b ............................................................................................4, 8

N.Y. Exec. Law § 172-d ................................................................................................3

N.Y. Exec. Law § 175 ....................................................................................................3

N.Y. Exec. Law § 177 ....................................................................................................3

N.Y. Exec. Law §§ 171-a to 177 ...................................................................................3

N.Y. Pub. Off. Law § 87 ..............................................................................................12

N.Y. SAPA § 100 .........................................................................................................17

N.Y. SAPA §§ 201-207 ................................................................................................17

**Other Authorities**

2006-13 N.Y. St. Reg. 45-47 (Mar. 29, 2006) ...............................................4, 17, 20

2006-40 N.Y. St. Reg. 19 (Oct. 4, 2006) .......................................................5, 17, 20

2014-44 N.Y. St. Reg. 29 (Nov. 5, 2014) ...................................................................13

**Regulations**

13 N.Y.C.R.R. § 90.1 .....................................................................................................4

13 N.Y.C.R.R. § 91.4 .....................................................................................................4

13 N.Y.C.R.R. § 91.5 .....................................................................................................4

13 N.Y.C.R.R. § 91.6 (2013) (repealed 2014) ............................................................13

13 N.Y.C.R.R. § 92.3 (2003) ..........................................................................................5

13 N.Y.C.R.R. § 97.1 .....................................................................................................3

26 C.F.R. § 1.501(c)(3)-1 ........................................................................................18, 19

26 C.F.R. § 1.501(c)(4)-1 ...........................................................................................................18

Defendant Eric T. Schneiderman, in his official capacity as the Attorney General of the State of New York ("Attorney General"), respectfully submits this memorandum of law and the accompanying Declaration of Karin Kunstler Goldman, dated November 20, 2015 ("Goldman Decl."), in support of his motion to dismiss Plaintiffs' First Amended Complaint ("FAC").[1]

## PRELIMINARY STATEMENT

This action concerns a facial and as-applied challenge to the constitutionality of New York's annual reporting requirements for nonprofit organizations.  Specifically, Plaintiffs Citizens United and Citizens United Foundation, two nonprofit organizations, object to New York's long-standing mandate that they submit copies of Schedule B to IRS Form 990 to the Attorney General because the schedule identifies their major contributors.  Plaintiffs initially sought a preliminary injunction, which the Court denied based on its conclusion that they were not likely to succeed on the merits of any of the claims set forth in the complaint.  Now, with an amended pleading that suffers from many of the same fatal flaws as its predecessor, Plaintiffs again seek to prevent the Attorney General from enforcing New York law.  Because Plaintiffs, despite being given another opportunity, still cannot state any viable causes of action, this case should be dismissed.

Plaintiffs' claims—that New York's registration and reporting requirements for charitable organizations violate the First and Fourteenth Amendments, are *ultra vires* as applied to social welfare organizations, and are preempted by federal law—uniformly fail as matters of settled law.  Contrary to Plaintiffs' assertions, the Schedule B requirement, which applies to *every* charitable organization regardless of the content of its solicitations, is a valid exercise of the Attorney General's broad

---

[1] The Court can and should consider the Goldman Declaration and the exhibits thereto (which consist of copies of Plaintiffs' annual filings with the Attorney General's office, and the Charities Bureau's official publication) in deciding the instant motion to dismiss.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (in context of Rule 12(b)(6) motion, courts may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."); Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC, No. 14 Civ. 9783 (PAE), 2015 U.S. Dist. LEXIS 115610, at *20-21 (S.D.N.Y. Aug. 31, 2015) (government records subject to judicial notice) (collecting cases).

supervisory powers over charitable operations in the State, directly furthers New York's substantial interest in enforcing State law, and does not impermissibly infringe on Plaintiffs' First Amendment rights.  As before, Plaintiffs' allegations of a "chill" to their speech and associational rights due to a loss of donations are wholly conclusory and speculative, and they still fail to adequately plead the credible threat of reprisals or harassment necessary to state a cognizable First Amendment claim. They similarly fail to establish that Citizens United, an entity which by its own description is engaged in promoting social welfare, falls outside the ambit of New York's charitable solicitation law. Plaintiffs' due process claim likewise fails because the regulation requiring organizations to submit contributor information is clear and unambiguous on its face, and was duly promulgated.  And to the extent they attempt to assert an equal protection claim, this too must fail because they do not identify any facts suggesting that the Schedule B requirement has been enforced in a discriminatory manner.  Finally, New York's reporting requirement is plainly not preempted by federal law.

Accordingly, the Court should dismiss the First Amended Complaint in its entirety.

## STATEMENT OF FACTS

Plaintiff Citizens United is a nonprofit "social welfare" organization that claims tax-exempt status under 26 U.S.C. § 501(c)(4).  FAC ¶ 3.  Citizens United "seeks to promote the traditional American values of limited government, free enterprise, strong families, and national sovereignty and security" through "a combination of education, advocacy, and grassroots programs."  Id.

Plaintiff Citizens United Foundation is a nonprofit organization that claims tax-exempt status under 26 U.S.C. § 501(c)(3), as an entity "organized and operated exclusively for . . . , charitable . . . , or educational purposes."  Id. ¶ 4.  Citizens United Foundation is "dedicated to informing the American people about public policy issues which relate to traditional American values, including: the Constitution as the supreme limit on federal power; a strong national defense . . . ; free enterprise . . . ; and the recognition of the family as the basic social unit of our society."  Id.

Citizens United and Citizens United Foundation are related organizations that share a central mission. See Affidavit of David N. Bossie, dated May 19, 2014 (attached to FAC) ("Bossie Aff."), ¶ 4; *Frequently Asked Questions, Citizens United*, http://www.citizensunited.org/ frequently-asked-questions.aspx (last visited Nov. 10, 2015)[2] (describing Plaintiffs as "related"). They share the same leadership. See Bossie Aff. ¶¶ 1, 3; *Who We Are, Citizens United*, http://www.citizensunited.org/ who-we-are.aspx (last visited Nov. 10, 2015) (listing officers and directors shared by Plaintiffs, including Michael Boos).

The Attorney General, through the Charities Bureau (the "Bureau"), is responsible for supervising all charitable operations in New York. FAC ¶ 5; N.Y. Exec. Law §§ 171-a to 177. By statute, the Attorney General's oversight extends over charitable organizations that solicit funds in the State. N.Y. Exec. Law § 172(1). Among the Bureau's myriad duties is to ensure that funds and property held for charitable purposes are properly used. Id. §§ 172-d(4), 177. New York law empowers the Attorney General to pursue a wide range of remedies to address violations of the charitable solicitation laws: he may enjoin unlawful conduct, impose civil penalties, and, upon notice, cancel a charitable organization's registration. Id. §§ 175, 177.

## A.      The Internal Revenue Service's Requirements for Tax-Exempt Nonprofits

Nonprofit organizations seeking tax-exempt status must apply for and be granted such status by the United States Internal Revenue Service ("IRS"). See generally 26 U.S.C. § 501. Depending on an organization's mission and planned activities, it may choose to organize under different provisions of the federal Internal Revenue Code ("IRC").[3] Organizations organized under IRC § 501(c)(3) and § 501(c)(4) that meet certain gross receipt and asset thresholds must annually file

---

[2] The Court may take judicial notice of publicly available information on a party's own website. See, e.g., Wells Fargo Bank, 2015 U.S. Dist. LEXIS 115610, at *22 (collecting cases).

[3] For instance, § 501(c)(3) organizations must generally be engaged in charitable efforts and are generally restricted from political lobbying, whereas "social welfare organizations" organized under § 501(c)(4) are permitted to be more actively involved in the political process, so long as it is not their primary activity. See 26 U.S.C. §§ 501(c)(3), (4).

with the IRS a complete Form 990 in order to maintain their tax-exempt status.  See *Exempt*

*Organizations – Required Filings*, *IRS*, https://www.irs.gov/Charities-&-Non-Profits/Exempt-

Organizations-Required-Filings (last visited Nov. 12, 2015).  Although the IRS is required to

maintain in confidence certain tax return information, federal law directs the IRS to make Forms

990 for § 501(c)(3) and § 501(c)(4) organizations—with the exception of the names and addresses of

their contributors—available for public inspection.  See 26 U.S.C. §§ 6103, 6104(d)(1),

6104(d)(3)(A).

## B.    New York's Registration Requirements

New York law defines a "charitable organization" as "[a]ny benevolent, philanthropic,

patriotic, or eleemosynary person or one purporting to be such," N.Y. Exec. Law § 171-a(1), as well

as those "promoting social welfare" or organized "for a public benefit" or for "educational"

purposes, 13 N.Y.C.R.R. § 90.1.  New York mandates that charitable organizations intending to

solicit funds within the State must first register with the Attorney General, and then submit annual

financial reports.  N.Y. Exec. Law §§ 172(1), 172-b(1).  Section 172-b(1) of the New York Executive

Law empowers the Attorney General to prescribe the specific form and content of the annual

reports.  Pursuant to this statutory directive, the Attorney General promulgated detailed regulations

governing the registration and annual filing for charities.  See 13 N.Y.C.R.R. § 91.4 (initial

registration); § 91.5 (annual filing).  Under these regulations, a charitable organization's complete

annual report consists of the CHAR500 (the Bureau's annual filing form), as well as schedules and

attachments to the CHAR500.  13 N.Y.C.R.R § 91.5(c).

The regulation at issue in this action, § 91.5(c)(3)(i)(a), requires that the CHAR500 be

accompanied by "a copy of the complete IRS Form 990, 990-EZ or 990-PF with schedules."  FAC

¶ 23.  This provision was duly promulgated in 2006, following the requisite public notice-and-

comment process.  2006-13 N.Y. St. Reg. 45-47 (Mar. 29, 2006); 2006-40 N.Y. St. Reg. 19 (Oct. 4,

2006).  It replaced a prior regulation that had required nonprofits to submit "IRS Form 990, 990EZ, or 990PF, including schedules A and B and any other schedules or statements required to be attached."  See 13 N.Y.C.R.R. § 92.3(b)(2) (2003).

Both before and after the promulgation of § 91.5(c)(3)(i)(a), the Bureau instructed charitable organizations to submit all schedules to IRS Form 990, including Schedule B, as part of their annual filing.  See, e.g., Citizens United's 2005-2012 CHAR500 (Exs. B-I to Goldman Decl.).  The instructions to the CHAR500, however, expressly inform taxpayers of the Bureau's practice to exempt Schedules B from Freedom of Information Law ("FOIL") disclosures.  See Instructions for Form CHAR500: Annual Filing for Charitable Organizations (rev. 2010), at 6 (Ex. A to Goldman Decl.).  Indeed, while the Bureau generally makes a charitable organization's filings available to the public online, Schedules B are not included in these publicly-available documents.  See *Charities Bureau Registry Search*, *New York State Office of the Attorney General*, http://www.charitiesnys.com/RegistrySearch/search_charities.jsp (last visited Nov. 10, 2015).

## C.    The Bureau's Deficiency Notices

Plaintiffs have been registered with the Bureau since 1995.  FAC ¶ 25.  Since that time, while Plaintiffs have consistently filed annual CHAR500 forms, to which they attached other schedules to the Forms 990 filed with the IRS, they have not included full copies of their Schedules B.  Id. ¶¶ 29-30.  Beginning in 2012, the Bureau began sending deficiency notices to organizations that did not file full copies of their Schedules B as required.  Id. ¶¶ 26-27.  In April 2013, after receipt of Plaintiffs' fiscal year 2011 filings, the Bureau notified Plaintiffs of their filing deficiencies, and requested submission of their Schedules B.  Id. ¶ 26; Ex. B to FAC.  Plaintiffs did not comply.  Id. ¶ 29.

## PROCEDURAL HISTORY

On May 22, 2014, Plaintiffs commenced this action, alleging in their initial complaint ("Compl.") that § 91.5's Schedule B requirement violates the First and Fourteenth Amendments,

and the New York State Administrative Procedure Act ("SAPA"), and that it is preempted by federal law.  ECF No. 2.  On June 16, 2014, Plaintiffs moved for a preliminary injunction seeking to enjoin the Attorney General's enforcement of the Schedule B requirement.  ECF No. 7.  Following briefing and oral argument, the Court issued an Opinion and Order, dated July 27, 2015, denying Plaintiffs' motion ("PI Op.").[4]  ECF No. 38.

On September 30, 2015, the Attorney General filed a Rule 12(b)(6) motion to dismiss Plaintiffs' complaint.  ECF Nos. 51-53.  At the status conference held before the Court on October 5, 2015, Plaintiffs indicated that they planned to amend their complaint in light of the Attorney General's motion.  ECF No. 54.  The Court therefore dismissed the Attorney General's motion as moot.  ECF No. 55.  On October 21, 2015, Plaintiffs filed their First Amended Complaint.  ECF No. 56.  Like its predecessor, the Amended Complaint continues to assert that the Schedule B requirement violates the First and Fourteenth Amendments (Counts I and III), and is preempted by federal law (Count IV), but adds a new claim—that § 91.5's Schedule B requirement is *ultra vires* and cannot apply to organizations like Citizens United (Count II).  Id.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the pleading must contain sufficient factual allegations which state a facially plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim is "plausible on its face" when it is supported by enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  In the context of a Rule 12(b)(6) motion, courts must generally accept all well-pled factual allegations as true and draw all reasonable inferences in favor of the plaintiff, but need not credit conclusory statements or legal

---

[4] Plaintiffs filed but later voluntarily withdrew an interlocutory appeal to the Second Circuit of the Court's denial of their motion for a preliminary injunction.  ECF Nos. 50, 57.

conclusions supported with no factual content.  See Iqbal, 556 U.S. at 678.  The presumption of truth is similarly inapplicable to factual assertions that are contradicted by the complaint itself, by documents upon which the pleadings rely, or by facts of which the court may take judicial notice.  E.g., Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1095 (2d Cir. 1995); In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001).

## ARGUMENT

## I.    PLAINTIFFS FAIL TO STATE ANY VIABLE FIRST AMENDMENT CLAIM.

Plaintiffs allege that New York's registration and reporting requirements are facially invalid under the First Amendment because they confer "unbridled discretion" upon the Attorney General and thus constitute an impermissible "prior restraint" on protected speech.  FAC ¶¶ 40-41. Plaintiffs further claim that New York's mandate that they submit their Schedules B to the Bureau as part of their annual filing is unconstitutional as applied to them because it infringes upon their rights to free speech and free association based on their contributors' supposed desire for privacy.  Id. ¶¶ 49-51.  But none of these claims can survive the instant motion to dismiss.

### A.  New York's registration and reporting requirements for charitable organizations do not constitute a prior restraint on protected speech.

A facial challenge must be rejected where the statute at issue "has a plainly legitimate sweep." Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 (2008) (internal quotation marks omitted).  It is well-settled that although the solicitation of charitable donations is protected by the First Amendment, such speech is nevertheless "undoubtedly subject to reasonable regulation."  Vill. of Schaumburg v. Citizens for Better Env't, 444 U.S. 620, 632 (1980); accord Riley v. Nat'l Fed'n of the Blind, 487 U.S. 781, 789 (1988).  Speech regulation, however, may constitute an unconstitutional prior restraint if it in effect "vests unbridled discretion in a government official over whether to permit or deny expressive activity."  City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 755 (1988).  But this is not the case here.

On the contrary, the challenged reporting requirements in this action are clear, specific, and unambiguous.  Indeed, Article 7-A authorizes the Attorney General to prescribe the required forms for a charitable organization's annual filing, see N.Y. Exec. Law § 172-b(1), and the implementing regulations in turn clearly identify the CHAR500 as well as a discrete "closed set" of required forms, see PI Op., at 16, which specifically includes the organization's "complete Form 990 . . . with schedules," 13 N.Y.C.R.R. § 91.5(c)(3)(i)(a).  When viewed in light of this applicable "binding . . . administrative construction" and "well-established practice," Lakewood, 486 U.S. at 770, New York's charitable registration and reporting requirements do not confer upon the Attorney General "open-ended discretion to demand whatever he wishes" as a precondition of speaking, FAC ¶ 41, as Plaintiffs claim.  It is for this reason that the Court has already concluded that New York's charitable registration and reporting requirements are not unconstitutional prior restraints.[5]  See PI Op., at 16-17; see also Field Day, LLC v. Cnty. of Suffolk, 463 F.3d 167, 179-80 (2d Cir. 2006) (statutory catch-all provision was not unconstitutional prior restraint where official's exercise of discretion was bounded by "reasonably specific and objective" criteria).

**B.  New York's Schedule B requirement is constitutional because it is directly related to the Attorney General's substantial interest in enforcing State law.**

Disclosure requirements that condition speech upon the provision of information to the government, like the registration and reporting mandates at issue in this case, are subject to "exacting scrutiny."  See, e.g., Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 366-67 (2010)

---

[5] Insofar as Plaintiffs are asserting a claim of viewpoint discrimination under the First Amendment, FAC ¶ 41 (alleging in First Amendment count that "[t]he Attorney General also possesses (and has used) unfettered discretion with respect to which organizations will receive deficiency notices"), such a claim is easily dismissed.  The statutory and regulatory text setting forth the Schedule B requirement is plainly content and viewpoint neutral, as it applies equally to all charitable organizations intending to solicit in the State.  See generally N.Y. Exec. Law §§ 172(1), 172-b(1) (mandating registration and annual reports for "[e]very charitable organization"); 13 N.Y.C.R.R. § 91.5 (setting forth contents of annual filing for all organizations whose finances exceed certain thresholds).  Indeed, Plaintiffs' counsel has already expressly acknowledged as much.  See PI Op., at 16 (citing Tr. of Oral Arg. on Pls' Mot. for Prelim. Inj., at 17:10-14).  And to the extent Plaintiffs are instead asserting an equal protection claim of discriminatory enforcement under the Fourteenth Amendment, such a claim also fails as discussed infra, at 22-24.

("exacting scrutiny" applies to First Amendment challenges to "disclosure requirements [that] may burden the ability to speak, but . . . [that] do not prevent anyone from speaking"); Ctr. for Competitive Politics v. Harris, 784 F.3d 1307, 1312 (9th Cir. 2015), cert. denied, 2015 U.S. LEXIS 7065 (Nov. 9, 2015) ("We apply exacting scrutiny in the context of First Amendment challenges to disclosure requirements."); Nat'l Org. for Marriage v. McKee, 649 F.3d 34, 54 (1st Cir. 2011) (statutes which "require the divulgence of information to the public or to [a state agency], but do not directly limit speech" are "effectively disclosure laws subject to 'exacting scrutiny'"); PI Op., at 5-6 and n.2.  In the context of disclosure requirements, "exacting scrutiny" is satisfied so long as the required disclosure or reporting obligation bears "substantial relation" to a "sufficiently important governmental interest."  Citizens United, 558 U.S. at 366-67 (internal quotation marks omitted).  It warrants emphasis that because "disclosure is a less restrictive alternative to more comprehensive regulations of speech," id. at 369, laws that condition protected speech upon clearly set forth disclosure requirements have been consistently upheld on First Amendment grounds.  See id. at 369-71 (collecting cases); Am. Target Adver., Inc. v. Giani, 199 F.3d 1241, 1248 (10th Cir. 2000) ("The Supreme Court has indicated that registration and disclosure provisions do not raise First Amendment problems."); see also Ctr. for Individual Freedom v. Madigan, 697 F.3d 464, 470 & n.1 (7th Cir. 2012) ("[I]n the aftermath of Citizens United a number of suits have been filed challenging federal and state disclosure regulations as facially unconstitutional.  Of the federal courts of appeals that have decided these cases, every one has upheld the disclosure regulations against the facial attacks.").  The Schedule B requirement should be similarly upheld here.

Article 7-A of the Executive Law both empowers and obligates the Attorney General to exercise oversight over charitable organizations who solicit funds in the State, to investigate potential violations of the charitable solicitation laws, and to protect New York residents from fraudulent solicitations.  See PI Op., at 8-9; Viguerie Co. v. Paterson, 94 A.D.2d 672, 673 (1st Dep't

1983) ("The [Attorney General] is charged by law with the enforcement of the provisions of Article 7-A in the exercise of the State's police power, to prevent fraud and safeguard the public welfare in respect to charitable solicitations."). Courts have uniformly deemed such interests to be "sufficiently important" in the First Amendment context. See, e.g., Buckley v. Valeo, 424 U.S. 1, 67-68 (1976) (governmental interest in gathering information in order to be able to detect violations of law is sufficiently important to justify "recordkeeping, reporting, and disclosure requirements"); Schaumburg, 444 U.S. at 636 (interest in "protecting the public from fraud, crime and undue annoyance" in the context of charitable solicitations is "substantial"); PI Op., at 8-9; see also Ctr. for Competitive Politics, 784 F.3d at 1317 (California Attorney General has "*compelling* interest in enforcing the [charitable solicitation] laws of California") (emphasis added).

Additionally, the information provided by a nonprofit's Schedule B is directly and substantially related to the Attorney General's important law enforcement interests. Here, it cannot be reasonably disputed that information concerning the sources of funding for an organization may be relevant for determining whether the entity is pursuing legitimate charitable aims or whether it is in fact a sham or merely a vehicle for tax evasion. See PI Op., at 8-9. Schedule B thus comprises "an important part of the Attorney General's investigative arsenal," PI Op., at 9-10, and it follows that having it at his ready disposal better arms the Attorney General to effectively detect violations of the charitable solicitation laws. See Ctr. for Competitive Politics, 784 F.3d at 1317 (crediting California Attorney General's arguments that "having immediate access to Form 990 Schedule B increases her investigative efficiency, and that reviewing significant donor information can flag suspicious activity"). Such weighty interests are sufficiently substantial to justify the limited First Amendment burden, if any, imposed by the disclosure, see discussion *infra*, at 11-16, and thus the challenged reporting requirement is facially constitutional under "exacting scrutiny." See Ctr. for Competitive Politics, 784 F.3d at 1312-17 (rejecting First Amendment challenge to California's

identical Schedule B requirement); <u>Am. Target Adver.</u>, 199 F.3d at 1248 ("Mandatory registration and disclosure [requirements] . . . directly promote Utah's legitimate interest in combating fraud while not unnecessarily interfering with solicitors' protected speech."); PI Op., at 8-10.

**C. Plaintiffs' wholly conclusory pleadings fall short of establishing a valid as-applied First Amendment claim.**

Plaintiffs further maintain that providing their Schedules B to the Bureau (in addition to filing them with the federal government) will chill their First Amendment speech and associational rights because contributors will purportedly be less willing to donate if their identities may be publicly disclosed.  FAC ¶¶ 16-17, 49-51.  Plaintiffs allege their contributors fear "public backlash, financial harm, and worse" by being publicly associated with Plaintiffs and with Plaintiffs' "politically contentious and controversial" advocacy.  <u>Id.</u> ¶ 17.  However, these bare allegations are legally insufficient to state a viable First Amendment cause of action.

**1. The Amended Complaint fails to establish that the Schedule B requirement has impermissibly chilled Plaintiffs' speech and associational rights by curtailing donations.**

As a threshold matter, as before, there is no statement by any potential contributor that a donation will be, or has actually been, withheld on the basis of New York's Schedule B filing requirement.  On the contrary, all that is before the Court are the conclusory statements of David Bossie, president of both Citizens United and Citizens United Foundation, based on his "experience," that "if individuals know that their names could become public record, they will often refuse to donate," <u>see</u> Bossie Aff.[6], ¶ 7, and that one potential contributor "would give only upon [an assurance] that his identity would not be made public," and has not given because Plaintiffs did not give him such an assurance, <u>id.</u> ¶ 9.  Mr. Bossie additionally states that other unspecified past contributors have "expressed . . .  concerns about confidentiality" in connection with New York's

---

[6] This appears to be the identical affidavit that was submitted by Plaintiffs with their initial complaint, and which Plaintiffs relied upon in connection with their preliminary injunction motion.

Schedule B requirement, but stops short of actually claiming that any donations were lost based on those supposed concerns.  See id. ¶¶ 10-12.  But such generalized statements, based on Mr. Bossie's subjective beliefs about the intents and motivations of third parties not before the Court, are legally insufficient to establish that there is any concrete "chilling" of Plaintiffs' speech and associational rights as a result of New York's long-standing Schedule B mandate.  See PI Op., at 14 n.6 (rejecting concerns set forth in same Bossie affidavit); compare with Perry v. Schwarzenegger, 591 F.3d 1147, 1163-64 (9th Cir. 2009) (declarations by individuals specifically attesting they would be less likely to express their views on proposed ballot initiatives if such communications were required to be disclosed sufficient to create "reasonable inference" of impermissible "chilling" of speech).

Furthermore, Plaintiffs continue to, without any factual basis whatsoever, conflate the provision of Schedules B to the Attorney General with public disclosure.  Of course, it is only the threat of the latter that purportedly makes Plaintiffs' contributors reluctant to donate.  See Bossie Aff., ¶¶ 7-12 (stating that potential donors are concerned about public disclosure of their identities).  Here, in the face of Bureau's consistent statements on the CHAR500 instructions that Schedule B information will be exempt from public disclosure[7]—the withholding of which is amply supported by New York's Freedom of Information Law ("FOIL"), see N.Y. Pub. Off. Law § 87(2)(a)— Plaintiffs merely counter that "[u]pon information and belief, the Attorney General's practice has not been to maintain Schedules B in confidence, and such filings have been made publicly accessible by the Attorney General's office in the past," FAC ¶ 32.[8]  But it is axiomatic that pleadings based on

---

[7] The Bureau's publicly-available electronic database of the annual filings of all nonprofits registered in New York does not include Schedule B information.  See Charities Bureau Registry Search, New York State Office of the Attorney General, http://www.charitiesnys.com/RegistrySearch/search_charities.jsp. The registry's search results are judicially noticeable government records.  See Wells Fargo Bank, 2015 U.S. Dist. LEXIS 115610, at *20-21 (taking judicial notice of documents retrieved from official government websites).

[8] Additionally, presumably to support their contention that the Attorney General intends to publicize Plaintiffs' contributors in particular, Plaintiffs quote, entirely out of context, statements made by the Attorney General several years ago pertaining to a now-repealed regulation that was directed at nonprofits that engaged in "electioneering."  See

"information and belief" must nevertheless include facts upon which the belief is based, which are entirely lacking here.  E.g., Kajoshaj v. N.Y.C. Dep't of Educ., 543 Fed. Appx. 11, 16 (2d Cir. 2013) (summary order); Lefkowitz v. John Wiley & Sons, No. 13 Civ. 6414 (KPF), 2014 U.S. Dist. LEXIS 75650, *32-33 (S.D.N.Y. June 2, 2014).

Because Plaintiffs have failed to even allege a past instance of actual public disclosure, their conclusory claims in this regard—that the Bureau intends to publicly disclose Plaintiffs' Schedules B once they receive them from Plaintiffs, see FAC ¶¶ 33-36—simply cannot be credited.  See Iqbal, 556 U.S. at 678 ("naked assertions devoid of further factual enhancement" not entitled to presumption of truth); PI Op., at 12 n.5 (expressly observing "Plaintiffs have neither cited to a past instance of publication of the Attorney General [of a Schedule B] nor pointed to any FOIL request for a charity's Schedule B" in rejecting Plaintiffs' claims of public disclosure as speculative).  Thus, insofar as Plaintiffs' allegations of any "chilling" of their First Amendment rights purportedly resulting from a loss of donations is premised on fears of public disclosure, they must be rejected, once again, as purely speculative.  See PI Op., at 12 n.5, 14 n.6; Ctr. for Competitive Politics, 784 F.3d at 1316 (rejecting plaintiff's argument "that the Attorney General's systems for preserving

---

FAC ¶¶ 33-34; A.G. Schneiderman Announces New Disclosure Requirements for Nonprofits That Engage in Electioneering, Dec. 12, 2012, http://www.ag.ny.gov/press-release/ag-schneiderman-announces-new-disclosure-requirements-nonprofits-engage-electioneering (last visited Nov. 10, 2015).  That regulation provided, in relevant part, that § 501(c)(4) nonprofits registered with the Bureau that spent significant monies in connection with New York-specific elections must disclose the identities of the organizations' major donors, which would then be made public.  See 13 N.Y.C.R.R. § 91.6(c)(1) (2013) (repealed 2014); but see § 91.6(h)(1) (2013) (repealed 2014) (providing for exemption from public disclosure if disclosure would "create a reasonable probability" of "undue harm, threats, harassment or reprisals").  This regulation was repealed as of November 5, 2014 as duplicative of provisions of the New York Election Law and the regulations promulgated thereby.  See 2014-44 N.Y. St. Reg. 29 (Nov. 5, 2014).

Ultimately, the references to the Attorney General's statements pertaining to the since-repealed electioneering regulation are of no relevance to the claims before this Court.  Indeed, whether or not the Attorney General could have publicly disclosed the identities of contributors to nonprofits which engaged in election-related activities pursuant to *that* regulation is of no assistance to Plaintiffs' claims pertaining to the constitutionality of Schedule B requirement as set forth in § 91.5.  If anything, to the extent that Citizens United may be obligated to disclose the identity of their major contributors pursuant to statutes or regulations other than the ones challenged in this action, it would undercut Plaintiffs' ability to establish that any purported "chilling" of donations is "fairly traceable" to the Schedule B requirement in particular, for purposes of standing.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (standing requires injury that is "fairly traceable to the challenged action of the defendant").

confidentiality are not secure, and that its significant donors' names might be inadvertently accessed or released" as speculative and legally inadequate to establish the requisite First Amendment "chill"); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (standing requires that claimed injury is "actual or imminent, not conjectural or hypothetical").

### 2. Plaintiffs still fail to establish that the provision of Schedule B to the Bureau will result in "threats, harassment or reprisals" for their contributors.

Although the compelled disclosure of Schedule B may give rise to an as-applied associational claim, such is cognizable only where Plaintiffs can "show a reasonable probability that disclosure of its contributors' names will subject them to threats, harassment, or reprisals from either Government officials or private parties." Citizens United, 558 U.S. at 367 (internal quotation marks omitted); Ctr. for Competitive Politics, 784 F.3d at 1316. To satisfy this standard, Plaintiffs must, at minimum, plead some factually specific allegations of harassment or reprisals. See Nat'l Ass'n of Mfrs. v. Taylor, 582 F.3d 1, 21-22 (D.C. Cir. 2008) (affirming dismissal of complaint challenging disclosure requirement where plaintiff did not make sufficient showing of substantial risk of harassment or reprisals); Ctr. for Individual Freedom, 697 F.3d at 482-83 (affirming complaint's dismissal where plaintiffs provided "scant evidence or argument, beyond bare speculation" that public disclosure would "at all likely to precipitate 'threats, harassment, or reprisals'"). Plaintiffs have utterly failed to do so, once again.

The Court of Appeals of the District of Columbia, faced with a complaint asserting an as-applied First Amendment claim, but which contained only conclusory allegations of harassment and reprisals like those at issue here, had little trouble affirming the complaint's dismissal. Nat'l Ass'n of Mfrs., 582 F.3d at 20-22. In that case, the plaintiff trade association challenged a federal statute requiring lobbyists to disclose the identity of their contributors, claiming, *inter alia*, that the disclosure requirement violated the First Amendment because it would subject its members to retaliation and harassment. Id. In support thereof, plaintiff primarily relied on a declaration by its General Counsel

14

generally stating that the trade association "regularly lobbies on a variety of hot-button issues, including global warming and nuclear power, that may lead to adverse consequences for members identified as 'actively participating' in such efforts . . . . Taking policy positions that are unpopular with some groups may lead to boycotts, shareholder suits, demands for political contributions or support, and other forms of harassment." Id. at 21-22. The Court of Appeals rejected the generalized concerns stated in the declaration as legally inadequate. Id. And, after noting that the identity of the trade association's members was publicly available on plaintiff's website, the court concluded that the declaration was inadequate to constitute the requisite "evidence of any past incidents suggesting that public affiliation with [plaintiff] leads to a substantial risk of threats, harassment, or reprisals from either Government officials or private parties," and thus rejected plaintiff's as-applied First Amendment challenge as a matter of law. Id.

Plaintiffs' pleadings here are similarly deficient. Indeed, in lieu of concrete allegations that any individual contributor has been exposed to past threats of financial or other harm as a result of being associated with Plaintiffs, Plaintiffs merely offer their own self-serving allegation that "[u]pon information and belief, Plaintiffs' donors' fears are well grounded and evidentiary support will be adduced for them."[9] FAC ¶¶ 17, 35; but see Citizens United, 558 U.S. at 370 ("Citizens United . . . has offered no evidence that its members may face . . . threats or reprisals. To the contrary, Citizens United has been disclosing its donors for years and has identified no instance of harassment or retaliation."). Again, Plaintiffs' "information and belief" pleading, devoid of "further factual enhancement," should be disregarded. See Iqbal, 556 U.S. at 678; Lefkowitz, 2014 U.S. Dist. LEXIS

---

[9] Here, the Court may take judicial notice of the fact that identities of contributors to Citizens United's affiliated political action committee ("PAC"), the Citizens United Political Victory Fund ("CUPVF"), whose mission is to "support conservative candidates running for federal office who share Citizens United's vision . . . . ," *Mission, CUPVF*, http://www.cupvf.org/mission.aspx (last visited Nov. 13, 2015), are publicly available online, see *Contributors to Citizens United PAC (2016 Cycle), Center for Responsive Politics,* https://www.opensecrets.org/pacs/pacgave2.php?cycle=2016&cmte=C00295527 (last visited Nov. 10, 2015) (listing names and addresses of contributors to CUPVF*); CUPVF's Schedules A to FEC Form 3X, dated January 28, 2015,* http://docquery.fec.gov/pdf/453/15970064453/15970064453.pdf#navpanes=0 (last visited Nov. 10, 2015) (same).

75650 at *32 (allegations made on information and belief must be accompanied "facts demonstrating the basis for the information and belief") (internal quotation marks omitted); see also PI Op., at 14 n.6 (noting Plaintiffs' failure to provide "a single example of past retaliation against their donors by any law enforcement official whatsoever" was fatal to their as-applied First Amendment claim); Ctr. for Individual Freedom, 697 F.3d at 482-83 (rejecting associational claim where plaintiffs offered mere speculation public disclosure would result in harassment or reprisals); cf. NAACP v. Alabama, 357 U.S. 449, 462 (1958) (compelled disclosure violated First Amendment based on "uncontroverted showing that on past occasions" disclosure of members' identities "exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility").  In this case, the continued wholesale absence of even an allegation that Plaintiffs' contributors have faced any past threats of harassment or reprisals as a result of being publicly associated with Plaintiffs is necessarily fatal to Plaintiffs' as-applied First Amendment claim.  See, e.g., Ctr. for Individual Freedom, 697 F.3d at 482-83; Nat'l Ass'n of Mfrs., 582 F.3d at 20-22.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER SAPA.

Plaintiffs allege that § 91.5(c) "is *ultra vires* and therefore invalid under the New York State Administrative Procedure Act" because it is "not authorized by statute."  FAC ¶¶ 45, 47.  Although Plaintiffs concede that N.Y. Exec. Law § 172, the statute pursuant to which § 91.5(c) was promulgated, "purports to authorize registration requirements on charitable organizations," they maintain that "the implementing regulations go much further" by using a definition of "charitable organizations" that includes, *inter alia*, "social welfare organizations."  Id. ¶¶ 45-46.  According to Plaintiffs, "social welfare organizations are distinct from" charitable organizations (though they fail to explain how or why).  Id. ¶ 46.  For purposes of this argument, Plaintiffs now assert that "Citizens United is not a charitable organization, but a so-called 'social welfare' organization," and

therefore "application of 13 NYCRR § 91.5(c) to it would be *ultra vires* and not authorized by statute."  Id. ¶¶ 3, 46-47.  This claim is untenable for the reasons set forth below.

**A.  Plaintiffs fail to identify any SAPA provisions that were violated.**

As noted above, Plaintiffs purport to bring their "*ultra vires*" claim under SAPA, which was enacted in order to ensure that all administrative rule-making in the State conformed to a set of uniform procedures.  See N.Y. SAPA § 100 (legislative intent); §§ 201-207 et seq.  They do not, however, identify a single provision of SAPA which was supposedly violated in any way.  To the contrary, it is evident that the promulgation of § 91.5(c) complied with the public notice and comment procedures required by SAPA.  2006-13 N.Y. St. Reg. 45-47 (Mar. 29, 2006); 2006-40 N.Y. St. Reg. 19 (Oct. 4, 2006).  Plaintiffs' SAPA claim should be dismissed on that basis alone.  See Rent Stabilization Ass'n v. Higgins, 83 N.Y.2d 156, 175 (1993) (rejecting SAPA claim where there was no dispute that agency complied with applicable administrative rule-making procedures and submitted proposed regulation for notice and comment).

**B.  Plaintiffs fail to establish that social welfare organizations in general or Citizens United in particular are not subject to charitable registration requirements.**

Furthermore, Plaintiffs' current claim that Citizens United is not a charitable organization is belied by both the law and the facts.  Indeed, the original pleading in this matter freely characterized both Plaintiffs as "charitable organizations."  Compl. ¶ 26 ("Charitable organizations such as Plaintiffs . . . ").[10]  Although this characterization is conspicuously absent from the current iteration of the complaint (which asserts the "*ultra vires*" claim for the first time), Plaintiffs nevertheless continue to concede that Citizens United "is an organization not organized for profit but operated exclusively for the promotion of social welfare."  FAC ¶¶ 3, 46.  New York law, in turn, defines

---

[10] Similarly, counsel for Plaintiffs took no issue with the Court's description of Plaintiffs as charities during oral argument on their preliminary injunction motion.  See Transcript, dated October 10, 2014 (ECF No. 30), at 2-3. ("Court: Let's get some basic agreed-upon underlying facts on the record.  One, Schedule B lists the names, the addresses, and the contributions of Citizens United donors.  Any charity, but obviously we're dealing with Citizens United … Are we all agreed on those facts?  I hope we are.  Plaintiff?  Mr. McGahn: Yes, your honor.").

"charitable organizations" as "[a]ny benevolent, philanthropic, patriotic, or eleemosynary person or one purporting to be such." N.Y. Exec. Law § 171-a(1). Significantly, it is this definition of "charitable organizations" that applies to N.Y. Exec. Law § 172, *i.e.*, the statute upon which Plaintiffs' entire "*ultra vires*" argument rests. FAC ¶¶ 44-47. But Plaintiffs never even mention this controlling language, much less explain why Citizens United would not fall within its parameters.

Instead of citing the applicable state law definition of "charitable organizations," Plaintiffs claim that "Citizens United is not, as defined by federal law, a charitable organization." FAC ¶ 46. To support this assertion, they rely entirely on the fact that "corporations . . . organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes" and "organizations not organized for profit but operated exclusively for the promotion of social welfare" are identified separately on the IRC's list of tax-exempt entities. Id. (citing 26 U.S.C. § 501(c)(3), (4)). Solely based on the mere existence of these two entries, Plaintiffs maintain that "'social welfare' organizations are distinct from organizations 'organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes.'" FAC ¶ 46. They do not, however, describe this supposed distinction either as a general matter or with respect to Citizens United in particular. In short, they do not explain how social welfare organizations are different from charitable organizations or why "Citizens United is the former type of organization," id., as opposed to the latter.

Nor do Plaintiffs cite any authority which even suggests that "social welfare organizations" are excluded from the IRC's definition of "charitable organizations." To the contrary, the relevant implementing regulations make clear that "charitable" organizations and "social welfare" organizations are not mutually exclusive. See 26 C.F.R. § 1.501(c)(3)-1(d)(2) ("The term charitable is used in section 501(c)(3) in its generally accepted legal sense and . . . includes: . . . promotion of social welfare . . . ."); 26 C.F.R. § 1.501(c)(4)-1(a)(2) ("[a] social welfare organization will qualify for

18

exemption as a charitable organization if it falls within the definition of charitable set forth in paragraph (d)(2) of § 1.501(c)(3)-1 . . . .").  It is thus evident that the IRC provisions cited by Plaintiffs do not, in fact, create the distinction between social welfare organizations and charitable organizations that they now urge this Court to adopt.  Accordingly, their assertion that "Citizens United is not, as defined by federal law, a charitable organization," FAC ¶ 46, is baseless.

In any event, Plaintiffs' underlying contention—that social welfare organizations like Citizens United are beyond the reach of Executive Law § 172—is entirely without merit.  As noted above, the statute applies to "[e]very charitable organization," defined as "[a]ny benevolent, philanthropic, patriotic, or eleemosynary person or one purporting to be such."  N.Y. Exec. Law §§ 172, 171-a(1).  Plaintiffs fail to explain how or why this definition should be read to exclude entities "operated exclusively for the promotion of social welfare," much less cite any authority that would support such a reading.  To the contrary, the list of entities that are exempt from the requirements of § 172 (a list that is explicitly set forth in the statute itself) does not include social welfare organizations.  N.Y. Exec. Law § 172-a (identifying the "[c]ertain persons exempted").  The imposition of registration requirements on social welfare organizations is, accordingly, well within the bounds of authority granted by § 172.

Thus, Plaintiffs have offered no authority whatsoever to suggest that the New York State legislature intended to exclude "social welfare" organizations from charitable registration requirements.  Their claim that applying § 91.5(c) to such organizations is *ultra vires* and not authorized by statute is, accordingly, entirely without merit.  See Consol. Edison Co. v. Dep't of Envtl. Conservation, 71 N.Y.2d 186, 192-96 (1988) (finding agency acted within its statutory authority because "[t]here is nothing contained in the 1977 or 1983 Acts that evinces a legislative intent to narrow DEC's broad grant of authority to promulgate regulations" at issue).  Indeed, including "social welfare" organizations within the definition of charitable organizations subject to

registration requirements was well within the legislature's grant of authority.  See Rent Stabilization Ass'n, 83 N.Y.2d at 170 ("[I]n defining the persons to be afforded noneviction protection in an ongoing housing crisis, DHCR has acted within its competence and authority.").

## III.   PLAINTIFFS FAIL TO STATE A FOURTEENTH AMENDMENT CLAIM.

Plaintiffs allege that "[t]he Attorney General's unannounced policy change to require the filing of Schedule B therefore denies Plaintiffs due process of law, because the change was not accompanied by fair notice."  FAC ¶ 52.  This due process claim rests on two allegations.  First, the assertion that "organizations had been filing their charitable registrations for years without including a list of donors, and no enforcement action had ever been launched.  Both Plaintiffs had filed their registrations for many years, had never included this information, and had never received a notice that these registrations were deficient."  Id.  And second, the assertion that "[t]he relevant regulatory text had also been amended to eliminate any reference to Schedule B."  Id.  As a result of these circumstances, Plaintiffs claim to have been unaware of the Schedule B requirement until they received deficiency notices in 2012.  Id. ¶ 26 (describing the 2012 deficiency notices as "Plaintiffs' first notification of any requirement that either was required to file its Schedule B list of donors").  However, their position is untenable both as a matter of law and as a matter of fact.

### A.   Plaintiffs fail to allege a due process claim because the Schedule B requirement is not a policy change and Plaintiffs had fair notice of the requirement.

As an initial matter, there is no question that § 91.5(c), the regulation containing the Schedule B requirement, was adopted in 2006 following a public notice and comment period.  2006-13 N.Y. St. Reg. 45-47 (Mar. 29, 2006); 2006-40 N.Y. St. Reg. 19 (Oct. 4, 2006).  Plaintiffs' claim that they were unaware of the requirement until six years later should be discounted on that basis alone, especially because the language of the regulation is unambiguous.  Specifically, § 91.5(c) clearly states that a charitable organization's annual filing with the Bureau "must include . . . a copy of the complete IRS Form 990, 990-EZ or 990-PF with schedules."  13 N.Y.C.R.R. § 91.5(c)(3)(i)(a).

Because an organization's submission of Form 990 to the IRS would not be "complete" without the attached schedules, including Schedule B, the only sensible reading of § 91.5(c) is that the word "complete" and the phrase "with schedules" apply equally to Forms 990, 990-EZ, and 990-PF.[11] Indeed, the regulation that preceded § 91.5(c) stated that the annual filing must include "IRS form 990, 990EZ, or 990PF, including schedules A and B and any other schedules or statements required to be attached." 13 N.Y.C.R.R. § 92.3(b)(2) (2003). It is thus evident that the Schedule B requirement is not a recent policy change, but rather a long-standing regulatory mandate.[12]

This mandate is reflected in the Bureau's CHAR500 forms, which since at least 2005 have consistently and expressly identified Schedule B as one of documents that must be included with each annual submission. See Citizens United's 2005-2012 CHAR500 (Exs. B-I to Goldman Decl.). Given Plaintiffs' admitted familiarity with the CHAR500 forms, FAC ¶¶ 23, 26, it is inconceivable that they were unaware of the Schedule B requirement until 2012. Indeed, this Court previously noted that "even assuming that the regulation were susceptible to different readings, Citizens United would have fair notice of the Attorney General's interpretation by reading the CHAR500 and the Instructions, which unambiguously and consistently mandate the submission of Schedule B." PI Op., at 19-20. The existence of those unambiguous instructions, combined with the clear language and regulatory history of § 91.5(c), has already led this Court to conclude that "the Schedule B policy is neither a new rule nor an amendment to a prior rule, but rather a long-held interpretation of an

---

[11] It is "axiomatic" that courts must apply "a sensible and practical over-all construction" to a statute or regulation, "especially when an opposite interpretation would lead to an absurd result." Long v. Adirondack Park Agency, 76 N.Y.2d 416, 420 (1990). Plaintiffs' proposed interpretation of § 91.5(c) would lead to just such a result. Specifically, they appear to be arguing that § 91.5(c) should not be read to require the submission of Schedule B to Form 990 because it was "amended to eliminate any reference to Schedule B" in particular. FAC ¶ 52. But this interpretation would completely ignore the actual language of § 91.5(c), which calls for the submission "of the *complete* IRS Form 990" and uses the phrase "with schedules" at the end of the list of required forms.

[12] However, to the extent the Court credits Plaintiffs' argument that § 91.5(c) is unclear, the Pullman doctrine, which provides that federal courts should abstain from hearing "cases in which the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law," would apply. Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716-17 (1996).

existing rule" and, accordingly, "that the Charities Bureau has in fact never changed its interpretation of section 91.5." Id. at 18, 21.  Plaintiffs nevertheless continue to characterize the Schedule B requirement as an "unannounced policy change" that "was not accompanied by fair notice."  FAC ¶ 52.  Because their position is as baseless as before, the Court should reject it again in similar fashion.

Moreover, Plaintiffs cannot salvage their "policy change" argument by citing the Attorney General's supposed non-enforcement of the Schedule B requirement in previous years.  FAC ¶ 52. It is well-established that an agency's enforcement decision is "generally committed to an agency's absolute discretion."  Heckler v. Chaney, 470 U.S. 821, 831 (1985)) (rejecting due process challenge to agency's enforcement of local ordinances and state laws), quoted in Leland v. Moran, 80 Fed. Appx. 133, 135 (2d Cir. 2003) (summary order) (noting that courts are particularly ill-equipped to review an agency's decision not to prosecute or enforce). The law is also clear that principles of laches or estoppel do not bar government agencies from enforcing regulations, even when they "have been allowed to lie fallow."  Clear Channel Outdoor, Inc. v. City of N.Y., 594 F.3d 94, 110-11 (2d Cir. 2010) (criticizing plaintiffs for litigating "a self-inflicted wound" in "seek[ing] to justify continued violation by citing a prior history of lax enforcement") (internal quotation marks omitted).

B. **Plaintiffs fail to allege a selective enforcement claim because they do not identify a similarly situated group that was treated differently or that they were subjected to impermissible considerations.**

Finally, to the extent that Plaintiffs are attempting to assert a selective enforcement claim under the Equal Protection Clause, FAC ¶¶ 28, 33-36, 41, their allegations are patently insufficient. "The Equal Protection Clause of the Fourteenth Amendment directs that 'all persons similarly situated . . . be treated alike.'"  Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir. 1999) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).  Accordingly, "[i]n order to establish a violation of equal protection based on selective enforcement, the plaintiff must ordinarily show '(1) the person, compared with others similarly situated, was selectively treated;

and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Id. (quoting LaTrieste Rest. & Cabaret Inc. v. Vill. of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994)).  Plaintiffs fail to allege the existence of either element.

First, Plaintiffs do not "allege the existence of a similarly situated group that was treated differently." Brown v. City of Oneonta, 221 F.3d 329, 337 (2d Cir. 2000).  Despite a conclusory assertion that "[o]n information and belief, not all organizations who have declined to file a full Schedule B have been sent deficiency notices," FAC ¶ 28, Plaintiffs fail to identify a single example of such a situation.  Their selective enforcement claim must fail for that reason alone.  Parkash v. Town of Southeast, 468 Fed. Appx. 80, 81 (2d Cir. 2012) (summary order) (affirming dismissal of selective enforcement claim where complaint failed to allege existence of similarly situated person who was treated differently); Norton v. Town of Brookhaven, 33 F. Supp. 3d 215, 239-40 (E.D.N.Y. 2014) (dismissing selective enforcement claim where plaintiff merely alleged there were similarly situated persons "upon information and belief" but failed to provide any examples).

Plaintiffs are similarly unable to satisfy the "impermissible considerations" prong of their selective enforcement claim.  Indeed, "to the extent plaintiff alleges an equal protection violation based upon an impermissible consideration, *viz.*, to punish the exercise of his constitutional rights, such a claim is foreclosed by plaintiff's failure to establish a constitutional violation." Bartels v. Inc. Vill. of Lloyd Harbor, No. 10 Civ. 5076 (PKC) (GRB), 2015 U.S. Dist. LEXIS 43183, at *33 (E.D.N.Y. Feb. 18, 2015), adopted by 2015 U.S. Dist. LEXIS 42750 (E.D.N.Y. Mar. 31, 2015).  In addition, Plaintiffs fail to allege (much less cite facts to suggest) that their receipt of deficiency notices was motivated by a desire to inhibit them from or punish them for exercising their First Amendment rights.  Their vague and exceedingly general assertion, unsupported by any facts, that "not all organizations who have declined to file full Schedules B have been sent deficiency notices,"

23

FAC ¶ 28, is patently insufficient to adequately plead that the specific notices they received were based on "impermissible considerations." See Leary v. Civil Serv. Emp. Ass'n, No. 11 Civ. 716 (CS), 2012 U.S. Dist. LEXIS 65164, at *36-37 (S.D.N.Y. May 9, 2012) (dismissing selective enforcement claim where complaint was "entirely devoid of facts indicating" discriminatory intent).

## IV.    PLAINTIFFS FAIL TO STATE A CLAIM OF CONFLICT PREEMPTION.

Plaintiffs' final claim is that the IRC somehow precludes state agencies from collecting the schedules to Form 990 directly from taxpayers.  FAC ¶¶ 57-59.  Citing two IRC provisions, they allege that the Section B requirement "both conflicts with federal law (because federal law directs that Schedule B is to be confidential) and stands as an obstacle to the achievement of the purposes and objectives of federal law (by attempting an end-run around the mechanism set up by federal law for States to request tax return information)."  Id. ¶¶ 57-58.  Plaintiffs thus invoke the principle of conflict preemption, which arises when a conflict between local and federal law makes it impossible to comply with both or creates an obstacle to the achievement of federal objectives.  N.Y. SMSA Ltd. P'ship v. Town of Clarkstown, 612 F.3d 97, 104 (2d Cir. 2010).  No such conflict exists here.

As an initial matter, Plaintiffs mischaracterize the statutory bases for their preemption claim, 26 U.S.C. §§ 6103 and 6104, as "a general rule of non-disclosure of tax information" and "an extensive regulatory regime to govern and protect the release of tax information."  FAC ¶ 57.  On the contrary, the clear terms of the cited provisions demonstrate that they govern only the disclosure obligations of the IRS.  Specifically, § 6103 establishes a general rule of confidential treatment of tax returns *by the IRS*, while § 6104 obligates *the IRS* to make available for public inspection the tax returns of certain tax-exempt organizations, excluding the names and addresses of contributors.  See 26 U.S.C. §§ 6103(a), 6104(d)(1), 6104(d)(3)(A).  Indeed, it is evident from their legislative history that Congress intended these provisions to control the IRS's disclosure of tax return information. Stokwitz v. United States, 831 F.2d 893, 894 (9th Cir. 1987) ("Congress's overriding purpose [in

enacting 26 U.S.C. § 6103] was to curtail loose disclosure practices *by the IRS*") (emphasis added).

Further undermining Plaintiffs' conflict argument is the fact that the IRC expressly contemplates the possibility that state agencies may need to obtain copies of a taxpayer's returns in order to administer state charitable solicitation laws. See 26 U.S.C. § 6104(c)(3). Indeed, Plaintiffs themselves concede that the very provisions on which they rely actually contemplate "the release of tax information to States who demonstrate a need to receive it." FAC ¶ 57 (citing 26 U.S.C. § 6104). They entirely fail to explain how or why requesting that same information directly from taxpayers, rather than going through the IRS, would undermine its confidentiality or constitute "an end-run around the mechanism set up by federal law for States to request tax return information." Id. ¶ 58. To the contrary, the IRS has acknowledged that some state agencies may very well request a copy of Schedule B directly from taxpayers. Specifically, the IRS cautions that if taxpayers file a copy of Form 990 with any state, they should not attach Schedule B "unless a schedule of contributors is *specifically required by the state*." See *General Instructions to Schedule B*, https://www.irs.gov/pub/irs-pdf/f990ezb.pdf (last visited Nov. 18, 2015) (emphasis added). The clear implication is that some states (like New York) may specifically request contributor information from taxpayers, and thus are more likely to have mechanisms in place (as New York does) to protect it.

Accordingly, as this Court previously noted, Plaintiffs' conflict argument has already been rejected by the Ninth Circuit. PI Op., at 22-23 (citing Ctr. for Competitive Politics, 784 F.3d at 1318-19). This Court further expressed "agree[ment] with the Ninth Circuit that there is no evidence that Congress intended to prohibit states from obtaining Schedules B directly from charitable organizations." Id. at 23. Plaintiffs' claims to the contrary are thus entirely without merit.

## **CONCLUSION**

For the foregoing reasons, the Attorney General respectfully requests that the Court dismiss the First Amended Complaint, and order any further relief that is deemed just and proper.

Dated:  New York, New York
        November 20, 2015

Respectfully submitted,

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York

By:

      s/ Eva Dietz
      s/ Linda Fang
_____

Eva Dietz
Linda Fang
Assistant Attorneys General
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-8610