JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017.6702

TELEPHONE: +1.212.326.3939 • FACSIMILE: +1.212.755.7306

DIRECT NUMBER: (212) 326-3429
DMCGAHN@JONESDAY.COM

April 26, 2016

**BY ECF**

The Honorable Sidney H. Stein
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Citizens United v. Schneiderman*, No. 1:14-cv-3703

Dear Judge Stein:

We represent the plaintiffs in this suit. The Attorney General's motion to dismiss was filed on November 20, 2015, and the plaintiffs' memorandum in opposition ("Opp.") was filed on December 21, 2015. We we write to inform the Court of a recently issued decision that illustrates why the Attorney General's motion should be denied.

In *Americans for Prosperity Foundation v. Harris*, No. 2:14-cv-9448 (C.D. Cal. April 21, 2016), the district court granted the plaintiffs' "motion for a permanent injunction to enjoin the Attorney General of California from demanding its Schedule B form," following "a full bench trial" at which it determined that the "Schedule B disclosure requirement" was "unconstitutional as-applied." Slip op., at 1. In the course of doing so, the district court repeatedly relied on the evidentiary record—a record that the plaintiffs here are eager to develop. See Opp. 1 ("The Attorney General's repeated reliance on the limited factual record developed during the preliminary injunction hearing, and his attempts to inject other factual matter beyond the complaint, should therefore be rejected").

The district court first concluded that it was "unconvinced that the Attorney General actually needs Schedule B forms to effectively conduct its investigations." Slip op., at 3–4. The the record lacked even "a single, concrete instance in which pre-investigation collection of a Schedule B did anything to advance the Attorney General's investigative, regulatory or enforcement efforts." Slip op., at 6. Moreover, although AFP (like the plaintiffs here) had "been registered with the Attorney General since 2001" and had "never included a Schedule B with its annual filings," this "lack of compliance" "went unnoticed for over a decade"—because, the court concluded, the Attorney General simply "does not use the Schedule B in its day-to-day business." Slip op., at 4. Trial testimony from "the investigative unit of the Charitable Trusts Section … confirmed that auditors and attorneys seldom use Schedule B when auditing or investigating charities." *Ibid.* Indeed, in "ten years" of investigations, the government could

ALKHOBAR • AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • JEDDAH • LONDON • LOS ANGELES • MADRID
MEXICO CITY • MIAMI • MILAN • MOSCOW • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • RIYADH • SAN DIEGO

identify only "five instances [that] involved the use of a Schedule B." *Ibid.* (Even as to those five, the investigators "could not recall whether they had unredacted Schedule Bs on file before initiating the investigation." *Ibid.*) That illustrates why the plaintiffs here want to inquire (through discovery) whether it is "*in fact* true, as the Attorney General asserts, that requiring donor disclosure assists in identifying fraud? How does that work? How often is it done? Is it merely a hypothetical possibility, or is donor identity actually used in that fashion?" Opp. 11. Because those questions cannot be answered without an evidentiary record, the Attorney General's motion to dismiss must necessarily be denied.

In the *AFP* case, it was also made "abundantly clear during trial" that the Attorney General had "systematically failed to maintain the confidentiality of Schedule B forms." During the course of the litigation, AFP discovered evidence of "over 1,400" instances in which Schedule Bs were made publically available—including the disclosure of Planned Parenthood's "confidential Schedule B, which included all the names and addresses of hundreds of donors." Slip op., at 9. The *day before trial alone*, AFP identified 38 "confidential Schedule Bs that the Attorney General had publically posted." *Ibid.* This "pervasive, recurring pattern of uncontained Schedule B disclosures" was, the district court concluded, "irreconcilable with the Attorney General's assurances and contentions as to the confidentiality of Schedule Bs." *Ibid.* Similarly, the plaintiffs here have observed that while the Attorney General "asserts … that it is his policy to keep donor information exempt from public disclosure," they are entitled to explore (through discovery) "what that policy looks like in reality." Opp. 15.

The *AFP* trial also adduced "ample evidence establishing that AFP, its employees, supporters and donors face public threats, harassment, intimidation, and retaliation once their support for and affiliation with the organization becomes publicly known." Slip op., at 7. Similarly, the plaintiffs here have alleged that their donors "fear public backlash, financial harm, and worse, should their support of [plaintiffs] become known publicly." Opp. 14 (quoting First Amended Complaint ¶17). Whether, as in *AFP*, that "will be borne out by evidence" is a question for discovery, and cannot be resolved on a motion to dismiss. Opp. 14.

A courtesy copy of the decision is attached. We urge this Court to deny the Attorney General's motion to dismiss.

Respectfully submitted,

/s/ Donald F. McGahn II

cc: All parties of record (by ECF)